767 P.2d 30

STATE of Arizona, ex rel. Robert K. CORBIN, Attorney General, and the Arizona Corporation Commission, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Marilyn A. Riddel, a judge thereof, Respondent Judge,

Hubert A. GREGAN and Jacqueline E. Gregan, husband and wife; Gregan Development Company, a sole proprietorship; Barry M. Wolfson and Deborah Wolfson, husband and wife; Barry M. Wolfson, P.C.; Martin S. Frankel and Jane Doe Frankel, husband and wife; Martin S. Frankel, a law corporation; Wolfson & Frankel; Frank H. Brinkman and Dana J. Brinkman, husband and wife; Rod Gunn and Jane Doe Gunn, husband and wife; and G.R.C. Municipal Finance, Inc., a California corporation, formerly known as Rod Gunn & Associates, Inc., and as Gunn, Russell, Copenhaver & Co., Inc., Real Parties in Interest.

No. 1 CA–SA 88–096.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 29, 1988.

Reconsideration Denied Nov. 7, 1988.

Review Denied Feb. 7, 1989.

Robert K. Corbin, Atty. Gen. by Charles S. Pierson and Mark Sendrow, Asst. Attys. Gen., Phoenix, for petitioners.

Brown & Bain, P.A. by Eddward P. Ballanger, Phoenix, for real parties in interest Gunns, G.R.C. Mun. Finance, Inc.

Killian, Legg, Nicholas, Fischer, Wirken, Cook & Pew by M.P. Fischer, Mesa, for real parties in interest Brinkmans.

Renaud, Cook, Videan, Geiger & Drury, P.A. by J. Gordon Cook, Phoenix, for real parties in interest Gregan, Gregan Development, Wolfsons, Frankels, Wolfson & Frankel.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Richard J. Woods and Nicholas J. Wallwork, Phoenix, for the Industrial Development Authorities of the Cities of El Mirage and South Tucson, amici curiae.

## OPINION

HAIRE, Judge.

Petitioners, the state of Arizona and the Arizona Corporation Commission, have sought relief from the trial court's order dismissing one count of their complaint against real parties in interest Gregan, Wolfson, Frankel, Brinkman, and Gunn, their respective wives, and various corporations. The dismissed count alleges a violation of Arizona's anti-racketeering statutes, A.R.S. §§ 13–2301 to –2317, with theft as the predicate criminal offense. The trial court's order of dismissal appears to be based on its legal conclusion that arbitrage earnings on the proceeds of Industrial Development Bonds are not public funds. We have accepted jurisdiction in order to consider whether that conclusion was erroneous.

The relevant allegations in the complaint present the following picture. Gregan and his co-defendants ("the developers") convinced the Industrial Development Authorities of Chandler, South Tucson, and El Mirage ("Development Authorities") to issue tax-exempt bonds to help the developers finance the construction of low-income, multifamily housing projects. In order to obtain the Development Authorities' approval for the bond issues, the developers allegedly misrepresented or omitted to state certain material facts.

The Development Authorities approved bond issues totalling $368,400,000.00. Proceeds from the sale of the bonds were held in trust by United Bank and invested, at the direction of the developers, in certificates of deposit. The bonds paid about 8% interest; the certificates of deposit earned about 11% interest.

Under the trust indenture agreements, in order to insure that the bondholders would be repaid, the developers were required to obtain "credit enhancement" or "alternate security" before the bank could release bond proceeds for construction. When the

developers failed to obtain credit enhancement or alternate security, the proposed developments were terminated, and the housing projects were not built. On December 31, 1987, the bondholders were repaid in full.

During the period before the termination of the projects, investment of the proceeds from the bond sales generated an amount vastly greater than was necessary to pay service fees and to repay the bondholders. Pursuant to the terms of the trust indentures and loan agreements, the developers obtained disbursements amounting to virtually all of these excess earnings (arbitrage).

The state and the corporation commission ("the state") sued the developers. This action was consolidated, for pretrial purposes, with one in which United Bank had sought a declaratory judgment regarding the propriety of its own actions as trustee with respect to disbursements. The state's complaint lists six "claims for relief": one count of securities fraud and five civil racketeering counts based on various predicate offenses. The dismissed count (count 4) includes the following allegation:

> "[Developers] or their agents have engaged in racketeering, as more fully described in paragraphs 1 through 46 of this Complaint, through obtaining possession, control and use of funds from the proceeds of bonds issued under A.R.S. § 35–701, *et seq.*, for purposes other than those permitted by the Constitution and Laws of Arizona. To the extent that the funds derived from the sale of industrial development bonds were used for other than public purposes, such use constitutes theft and racketeering."

In dismissing this count, the trial court apparently reasoned that because the bond documents provided that the investment earnings not needed to repay bondholders were to be paid to the developers, these monies were not "property of another" that could be the object of theft by the developers under A.R.S. § 13–1802. The trial court rejected the state's argument that arbitrage earnings on the proceeds of industrial development bonds are public

funds, expenditure of which is constitutionally impermissible if the public does not receive adequate consideration. The court's explanation of its ruling does not reveal its reasons for rejecting this argument:

> "ORDERED ... Dismissing Count 4 (Racketeering—Theft) there being no supportable allegation of taking 'property of another' inasmuch as the money alleged to be 'taken' was not bond proceeds nor interest thereon needed to pay off bond holders but earnings on bond proceeds in excess of that needed to pay bondholders. Under the contract documents, this money was to go to the developers. Counsel have cited no authority for the proposition that excess earnings on bond proceeds are 'public funds' and cannot state where such funds would go."

Perhaps the trial court was persuaded by the developers' argument that proceeds of industrial development bonds are not public funds because the bonds are not a general obligation of the issuing authority—that is, public monies would never be expended to repay the bondholders. On the other hand, perhaps the court accepted another argument now advanced by the developers: that even if a loan from the proceeds of industrial development bonds must be for a public purpose, the disposition of excess interest earned on those proceeds before they are disbursed to the developers is not so limited. Arizona authority does not support the former position; reason compels us to reject the latter.

In sharp contrast to case law from other jurisdictions upon which the developers rely, the Arizona Supreme Court has repeatedly held that even though revenue bonds do not represent a general liability of the issuing authority, they are nonetheless subject to constitutional and statutory restrictions governing the use of public funds. In *Industrial Development Authority v. Nelson,* 109 Ariz. 368, 509 P.2d 705 (1973), for example, the attorney general challenged the legislation that authorized industrial development bond financing on grounds that it violated several pro-

visions of the Arizona Constitution, including article 9, § 7, which provides:

"Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation...."

The supreme court upheld the legislation after concluding that the Industrial Development Authority method of financing does not constitute a gift or donation to private persons, but is rather an expenditure in the public interest. Had the court concluded that revenue bond financing does not constitute a loan of public credit, there would have been no need to address the public purpose requirement.

The holding in *City of Phoenix v. Superior Court*, 109 Ariz. 533, 514 P.2d 454 (1973), is also instructive. The case concerned a contractor's claim to be the low bidder on a contract for the construction of a public works project to be financed through revenue bonds. The bonds did not represent a general obligation of the city. The contractor's claim was based on its entitlement to a statutory preference applicable to construction contracts that would be paid for from public funds. The supreme court held that the preference applied because proceeds from the sale of such revenue bonds were public funds.

The developers, however, maintain that the instant case presents no issue concerning the public nature of bond proceeds because the construction loans, which would have come from proceeds needed to repay bondholders, were not funded. In taking this position, the developers contend that if the constitutional requirements of a public purpose and adequate consideration apply at all to revenue bond financing, they apply only to monies actually loaned or donated, and not to arbitrage earnings, which they describe as the product of their own "investment acumen." We disagree.

First, it is difficult to imagine how bond proceeds that would be public funds had they reached the hands of the developers could be something else in the hands of the trustee. Second, by agreeing that excess earnings would be the property of the developers, the Development Authorities effectively allowed the developers to make use of all of the proceeds even before disbursements could be made of amounts needed to repay the bondholders. This use of monies borrowed by the Development Authorities generated the profits that the developers now claim as their own. These profits exist only because of the Development Authority's unique ability as a public agency to borrow money at a lower rate of interest than a private party would have to pay in the open credit market. In this light, it is apparent that a loan of the public credit occurred immediately and did not await disbursement of monies needed to repay the bondholders.

*Navajo Tribe v. Arizona Department of Administration*, 111 Ariz. 279, 528 P.2d 623 (1974), does not support the developers' argument to the contrary. The financing scheme in that case was not even remotely analogous to industrial development financing. It involved the use of federal funds to finance job training and employment programs for the Navajo Tribe and for the cities of Phoenix and Tucson. The Department of Economic Security administered the programs, for which it was reimbursed from funds supplied by the federal government. The supreme court held that the funds, which were held by the state as a mere "custodian" or "conduit" for the benefit of contributors, were not public funds subject to the appropriative power of the state legislature. The funds in question in *Navajo Tribe* were not even arguably derived from the use of public credit. The case is not pertinent to the question now before us.

We are persuaded that arbitrage earnings on the proceeds of industrial development bonds are public funds. Nevertheless, a loan or expenditure of the funds may be constitutionally permissible, even if some private individual or organization thereby derives a special benefit, as long a public purpose is thereby served. *Nelson*, 109 Ariz. at 373, 509 P.2d at 710. However, the propriety of a transaction involving the use of public funds or property is

not established merely because the funds or property is used for a public purpose. "The public benefit to be obtained from the private entity as consideration for the payment or conveyance from a public body may constitute a 'valuable consideration' but the Constitution may still be violated if the value to be received by the public is far exceeded by the consideration being paid by the public." *Wistuber v. Paradise Valley Unified School District,* 141 Ariz. 346, 349, 687 P.2d 354, 357 (1984).

*See also City of Tempe v. Pilot Properties, Inc.,* 22 Ariz. App. 356, 527 P.2d 515 (1975) (lease of city-owned land would be constitutionally impermissible if consideration received by city was so inequitable and unreasonable as to amount to an abuse of discretion).

We conclude that the trial court erred in dismissing count 4 of the state's complaint on the ground that it contained no supportable allegation concerning such "property of another" as might serve as the object of a theft. However, although our conclusion suggests that the allegations in the complaint might be sufficient to state a cause of action under A.R.S. § 35–212 (Supp.1987) to recover public monies illegally received, possession of illegally expended public monies does not necessarily constitute theft. Whether the complaint presents sufficient additional allegations to support a charge of theft is a question not addressed by the trial court. We therefore do not reach it.

For the same reason we also decline to address the developers' argument that any attack on the validity of the bond issues is barred by the statute of limitations in A.R. S. § 35–721(F) (Supp.1987).

The order of dismissal is set aside, and the matter is remanded for further proceedings.

GREER, P.J., and CORCORAN, J., concur.