## No. 15,140.

DAVIS ET AL. *v.* PENSIONERS PROTECTIVE ASSOCIATION ET AL.

(135 P. [2d] 142)

Decided February 23, 1943.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-
RENCE HINKLEY, Deputy, Mr. THEODORE A. CHISHOLM,
Assistant, Mr. DONALD H. MEYER, Assistant, for plaintiffs
in error.

Messrs. CHUTKOW & ATLER, Mr. L. F. CRAWFORD, for
defendants in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the
court.

DEFENDANTS in error, herein designated as plaintiffs,
instituted an action in mandamus in the district court

of the City and County of Denver to compel plaintiffs in error, defendants in the district court and herein designated as defendants, to transfer to the old age pension fund of the State of Colorado, certain sums of money aggregating in amount, $687,757.67, alleged to have been improperly diverted from the old age pension fund to other and illegal uses. Judgment was for plaintiffs. To reverse the judgment defendants prosecute a writ of error in this court.

Plaintiff, Pensioners Protective Association, is a nonprofit corporation organized under the laws of the State of Colorado for the purpose of protecting the rights of old age pensioners. The other individual plaintiffs are resident citizens, recipients of the old age pension, said to be injuriously affected by the alleged illegal diversion from the old age pension fund. Plaintiffs prosecuted the action for themselves and for all others whose situations are similar to that of the individual plaintiffs. The defendants are the members of the State Board of Public Welfare, the State Auditor, State Treasurer, Governor of the State, Secretary of State, and Attorney General. The action is against them in their official capacities respectively, as members of the State Board of Public Welfare, and as holders of the various state offices mentioned.

The issues before us for determination arose in the folowing manner:

In their complaint plaintiffs alleged certain diversions by defendants of surpluses in the welfare fund to the emergency and contingent fund, and alleged that the statute upon which they were made was unconstitutional. Plaintiffs do not allege that there were sufficient funds in the hands of or under the control of defendants to comply with a mandamus order in accordance with the prayer of the complaint that defendants return the diverted funds to the old age pension fund. Defendants moved to dismiss the complaint on the ground that it failed to state a claim against defendants upon which relief could be granted. The district court overruled the

motion. Defendants elected to stand on their motion. Judgment was then entered in favor of plaintiffs as above stated. The issues raised under the specification of points which are the subject of the principal arguments in the briefs are: (a) Whether the statute, in reliance upon which the funds were diverted, is constitutional; (b) whether mandamus should issue in the absence of an allegation in the complaint of available funds in defendants' hands, or under their control, to enable them to comply with an order for transfer to the pension fund; and (c) whether the supplemental complaint, if the original complaint is defective, can stand, and relief be granted thereon.

A knowledge of the factual background is necessary to an understanding of the controversy that culminated in the action before us for review, and for this reason we set it forth fully.

In 1936, the people of the state adopted Article XXIV of the Constitution, commonly referred to as the old age pension amendment. This amendment created and established in the treasury of the State of Colorado a fund to be known as the Old Age Pension fund, and allocated certain revenues to that fund. Section 2 (a), so far as material to the controversy, provides:

"Section 2. There is hereby set aside, allocated and allotted to the old age pension fund sums and money as follows:

"(a) Beginning January 1, 1937, eighty-five per cent of all net revenue accrued or accruing, received or receivable from [and here are enumerated various specific sources of revenue]."

Section 2 (b) allocates to the old age pension fund revenue from another source, not mentioned in 2 (a). Sections 4 and 7 of the amendment are as folows:

"Section 4. The state board of public welfare, or such other agency as may be authorized by law to administer old age pensions, shall cause all moneys deposited in the old age pension fund to be paid out to qualified pen-

sioners, after defraying the expense of administering the said fund, within ten days following the expiration of the calendar year in which deposits are made in said fund."

"Section 7. All the moneys deposited in the old age pension fund shall remain inviolate for the purposes for which created, and no part thereof shall be transferred to any other fund, or used or appropriated for any other purpose."

In 1936, the General Assembly, by chapter 5, Session Laws Second Extraordinary Session 1936 (sections 13 to 29, chapter 141, '35 C.S.A.), created a state department of public welfare and a state board of public welfare, to administer state funds allocated by the state to various forms of public assistance. By chapter 8, Session Laws Second Extraordinary Session 1936, sections 30 to 33, chapter 141, '35 C.S.A., the General Assembly created a state public welfare fund, section 1 of said chapter 8, so far as pertinent here, being as follows:

"Section 1. [Section 30, chapter 141, '35 C.S.A.] A fund to be known as the 'State Public Welfare Fund' is hereby created and established in the treasury of the State of Colorado.

"The 'State Public Welfare Fund' shall consist of all money appropriated, allocated or allotted by the General Assembly to said fund, for public welfare activities; all grants-in-aid from the Federal Government for state public welfare activities and such other funds as may be provided from time to time from other sources.

"The State Board of Public Welfare shall be the trustees of the 'State Public Welfare Fund' and shall be charged with the administration and distribution of money therein. The Treasurer of the State of Colorado shall be the treasurer and custodian of said fund * * *. All money therein, or accruing thereto shall be disbursed from the 'State Public Welfare Fund' upon voucher of the State Department of Public Welfare and upon warrant of the State Auditor."

By section 3, chapter 8, supra (Section 32, chapter 141, '35 C.S.A.), the revenues for the payment of old age pensions as then provided for by law (this Act was passed before passage of the old age pension amendment) were allocated to the state public welfare fund.

By section 2, chapter 223 of the session laws of 1937, (Section 32, chapter 141, 1941 Cum. Supp. to '35 C.S.A.), the revenues constituting the old age pension fund created by the old age pension amendment were allocated to the state public welfare fund. The language making such allocation is as follows: "Section 2. * * * Section 32. *Revenues and Sums Allotted State Fund.* There is hereby appropriated, allocated, and allotted to the 'State Public Welfare Fund,' to be used for public welfare purposes, sums and money as follows:" Here follows a designation of the revenues comprising, when collected, the old age pension fund, and also a $50,000 annual appropriation for the relief of indigent tuberculars and a blanket provision covering any other funds and money that may be appropriated or allocated by the General Assembly to the state public welfare fund.

Section 3, chapter 223 of the Session Laws of 1937, (Section 33, chapter 141, 1941 Cum. Supp. to '35 C.S.A.) provides that five per cent of the state public welfare fund, which, as indicated, is made up not only of revenues comprising the old age pension fund, but also of revenues allocated to other relief purposes, shall be deducted for cost of the composite administration of such projects. The clear legislative intent was that five per cent be deducted for this purpose whether or not all of it was expended, for it is further provided that any unexpended portion of the five per cent deducted "shall be disbursed as the General Assembly may direct."

The record discloses that at various times, in the manner provided by the General Assembly, distribution was made to the emergency and contingent fund of the five per cent of the hotchpot constituting the state welfare fund, remaining after all administrative expenses of the

various public assistance projects, including the old age pension project, had been paid. The contention of plaintiffs is that the cost of administration of the old age pension scheme of relief was much less than the five per cent of such funds allocated from the constitutionally created old age pension fund to the state welfare fund, and that a part of the surplus over and above the actual cost of administration of old age pension relief was expended in the administration of the other forms of relief thrown into the hotchpot with the old age pension scheme of relief, and that the remainder of the surplus was paid over at the various times to the emergency and contingent fund, in violation of the old age pension amendment. It is the surplus of the five per cent of the old age pension fund allocated to the state welfare fund, remaining after paying the actual cost of administration of old age pension relief, that plaintiffs seek to have returned to the old age pension fund to be used for the payment of pensions as they contend is by the constitutional amendment provided.

By supplemental complaint, plaintiffs seek to compel the payment of surplus funds similarly accruing since the commencement of the action and admittedly now available for transfer to the old age pension fund. Defendants, while admitting that, if the law is as contended by plaintiffs, the act providing for the transfer of surplus funds to the emergency and contingent fund is unconstitutional, and that such subsequently accruing surplus should be transferred to the old age pension fund to augment pension payments, contend further that since the original complaint stated no facts showing a right to relief, in other words, no cause of action in mandamus, there was no valid complaint to supplement, and that when the original complaint falls the supplemental complaint falls with it.

Our resolution of the problem suggested by the foregoing statement of facts in our view disposes of the specific assignments of error contained in plaintiffs'

specification of points relied upon for reversal, and for this reason we do not set forth such specified points in detail.

In our opinion, the constitutional provision to which we refer as the old age pension amendment, and which was held by us *In Re Interrogatories,* 99 Colo. 591, 65 P. (2d) 7, to be self-executing in so far as the establishment of the old age pension fund is concerned, is so clear with regard to the uses that may be made of the fund as to require no construction.

Section 4 of the amendment provides that at the end of the year all moneys that have been provided in the old age pension fund which have not been paid out to pensioners, "after defraying the expense of administering the said fund," shall be paid out to the qualified pensioners. The intended effect of this section is that the pensioners shall receive all moneys that· enter into the old age pension fund, except such as are required to defray the expense of administering the fund. If five per cent of the pension fund is allocated for administration expense and only a portion of it is used, and the remainder is transferred to the emergency and contingent, or any other state fund, the pensioners will fall short, by the amount of the surplus so transferred, of receiving the amount to which they are entitled under the amendment. Furthermore, section 7 of the old age pension amendment provides that "all the moneys deposited in the old age pension fund shall remain inviolate for the purposes for which created." The clear import of the language following the quoted portion of said section 7 is susceptible of no other interpretation than that the *moneys deposited* in the fund shall not be transferred to any other fund or used for any purpose other than for administrative expenses and for making the payments to the old age pensioners.

That portion of section 3, chapter 223, Session Laws 1937 (section 32, chapter 141, 1941 Cum. Supp. to '35 C.S.A.) requiring that "any balances remaining in

the administrative account at the end of the biennium commencing July 1, 1937 and each biennium thereafter, shall be disbursed as the General Assembly shall direct," to the extent that such balances contain unused money arising from the five per cent of the pension funds allocated to administrative purposes, is unconstitutional and void, and the trial court was right in so adjudging. In so far as money allocated from the old age pension fund is used to defray the expenses of administering relief schemes other than the old age pension plan of relief, this constitutes an unconstitutional diversion of pension funds from their constitutionally prescribed use. The trial court properly so held. The difficulties of accounting, if such there be under this holding, are not matters within the court's control. The remedy for them lies with the General Assembly, or possibly with the people, who alone can make or amend a constitution.

 ██ Defendants, while not denying that the diversions were made as alleged, assert first that, even though the diversions were made under authority of an unconstitutional statute, if in good faith, and no bad faith was pleaded, this is a good defense to an action in mandamus. In support of this position they quote from 16 C.J.S. 290, the following: "Acts of government departments, when declared unconstitutional, cease to be operative or binding. Although the rule that an unconstitutional law is a nullity cannot be applied to work hardship and impose liability on a public officer who, in performance of his duty, has acted in good faith in reliance on the validity of a statute before any court has declared it invalid, in the absence of such circumstances, an unconstitutional law affords no protection to officers who act under it, and officers cannot be punished for refusing to obey such a statute * * *. "

Plaintiffs counter the foregoing contention by asserting the proposition that a public official, who wrongfully diverts funds shown to have come into his hands, cannot set up his lack of funds occasioned by his own

wrong as a defense to a mandamus action. Plaintiffs cite numerous cases in support of this general proposition: *Bank v. Arthur,* 12 Colo. App. 90, 54 Pac. 1107; *Colorado Fuel & Iron Co. v. State Board of Land Commissioners,* 14 Colo. App. 84, 60 Pac. 367; *Terrace Irrigation District v. Braiden,* 92 Colo. 292, 19 P. (2d) 756; *Town of Morrison, et al. v. Burke,* 103 Colo. 167, 84 P. (2d) 461; *City and County of Denver v. People,* 103 Colo. 565, 88 P. (2d) 89; *People ex rel. v. Comptroller,* 77 N.Y. 45; *People ex rel. v. Treanor,* 44 N.Y. S. 528, 15 App. Div. 508; *Daugherty v. Riley,* 1 Cal. (2d) 298, 34 P. (2d) 1005; *Board of Commissioners v. Hadley,* 63 Fla. 90, 59 So. 14; *State ex rel. Keefe v. Adams,* 106 Fla. 733, 143 So. 644; *State ex rel. v. City of Hialeah,* 130 Fla. 370, 177 So. 609; *Hutcheson v. Manson,* 131 Ga. 264, 62 S.E. 189; *Hebron Bank v. Lawrence County,* 109 Miss. 397, 69 So. 209; *Booth v. Parnell,* 12 N.J. Mis. 413, 172 Atl. 50; *Stephenson v. Camp* (Tex. Civ. App. 1911), 138 S.W. 816.

None of these cases deals with a fact situation involving the payment of money by public officials in good faith in reliance on an unconstitutional statute. The two Colorado cases cited were cases in which cities—which are subordinate governmental units—were concerned, and they are subject to the power of the courts to direct the levying of taxes to meet the obligation properly to apply the funds which they claimed not to be available, in the one case to comply with a mandamus, and in the other to satisfy a judgment.

Defendants' contention that they are not liable to account in an action in mandamus as to funds that have been paid out in reliance on the statute that we herein hold unconstitutional, is well founded. Without a showing, and there is none in the record, that the defendants or some of them acting in their official capacities, are empowered to retransfer such funds, we know of no way, and none is suggested, in which the defendants could comply with a court's order that such diverted

funds be now applied to the payment of old age pensions. The General Assembly alone represents the legislative, one of the three coordinate branches of the state government. It is not subject to direction in a purely legislative function, such as the appropriation or allocation of money, by the judicial branch of the government. In the case at bar the court can do no more than declare to be unconstitutional the act of the General Assembly providing for diverting funds from their constitutionally prescribed use. Reimbursement, if any, must come as the voluntary legislative act of the General Assembly.

On December 9, 1940, prior to the filing of the second amended petition on which the issues were made up for the trial, a petition referred to as a supplemental petition was filed, asking that the surplus administrative funds accruing after March 16, 1940, a date subsequent to the institution of the suit, be ordered transferred to the old age pension fund. On March 16, 1940, the court enjoined defendants from transferring such accruing surplus to the general fund and since said date the court's order recites that such surplus funds have remained untransferred, in the hands of the state board of public welfare. Clearly, under our holding on the constitutional issue, there can be no authority in the board to divert such funds in their hands from their constitutional use, which is the payment of the old age pensions. Defendants contend that mandamus would not lie to compel them to retransfer to the old age pension fund the surplus from the administrative fund which they, in reliance on the statute, had diverted from the old age pension fund without a showing that the money was available. We have upheld this contention. They further contended that since this is the law, the second amended petition upon which the issues were framed failing to so show, stated no grounds for relief and that when this petition falls, the so-called supplemental petition falls with it because there can be no supplemental

right to relief when there was no right to relief under the principal alleged cause of action in the first instance. Cases are cited that defendants argue are analogous to the instant case and are authority in support of their contention: *Berssenbrugge, et al. v. Luce Mfg. Co.,* 30 F. Supp. 101; *New York Security & Trust Co. v. Lincoln St. Ry. Co.,* 74 Fed. 67; *Kryptok Co. v. Haussmann & Co.,* 216 Fed. 267. The first case above mentioned, arose out of an infringement on a patent right. By supplemental bill, plaintiffs complained of "an act of infringement entirely different from that which formed the basis of the original action or complaint."

The second case involves a mortgage foreclosure, begun when there was no default in the terms of the mortgage; hence, there was not then, and never had been a state of facts under which plaintiffs could seek relief. The court held that a default after suit could not be set up by supplemental complaint and the action prosecuted on the ground of this subsequent default.

In the third case it does not appear from the statement of facts in the opinion in what respect the original complaint was alleged to have failed to state a cause of action or why it was claimed relief could not be granted under it. The court announced the general rule contended for by defendants in this case and overruled the motion to dismiss the original complaint. We think none of these cases is analogous to the instant case.

 ██ Assuming, but not deciding, the correctness of the rule urged upon us, for it is not necessary to do so, we hold that plaintiffs are entitled to the relief prayed for in the so-called supplemental complaint. Plaintiffs grounded their right to relief on the continuing action of defendants in complying with an unconstitutional statute. True, plaintiffs set up certain specific consummated unconstitutional diversions and asked that defendants be directed to pay such alleged wrongfully diverted funds into the old age pension fund. By the so-called supplemental complaint based upon the

same alleged wrongful action in complying with an unconstitutional statute, plaintiffs asked that a temporary injunction issue directing that any subsequently accruing surplus be held by the welfare board until the determination of the cause and that it then be directed by the writ to use such surplus as the Constitution directs. If it had been alleged in the original complaint that prior to the determination of the cause surpluses remaining after payment of the administrative expenses out of the five per cent fund allocated to that purpose had been paid, and had asked that defendants be enjoined from diverting them in the future and that the amount thereof be ascertained at the trial, and defendants ordered to return them to the old age pension fund, this would have been entirely proper and would have made a supplemental complaint unnecessary. The so-called supplemental complaint accomplished nothing more than such allegations as we have indicated as proper would have accomplished in the original complaint. No new facts determinative of plaintiffs rights were brought into the case by the supplemental complaint. The successive diversions of surplus funds, in compliance with an unconstitutional statute as they successively accrued, was the real fact situation on which plaintiffs relied for relief and which entitled them to relief. The purpose of the action, as appears from a fair construction of both the original and supplemental complaints, was not alone to compel the payment of certain specific and definite sums of money, but primarily to compel the performance of a legal duty—the use of the surplus funds in accordance with the constitutional requirement rather than in accordance with the requirement of a statute inconsistent with express constitutional provisions. To compel performance of a clear legal duty under the law is a proper function of an action in mandamus. There is, as we have held in this case, a clear legal duty enjoined by the Constitution to use all funds not expended for the expense of adminis-

tration of the old age pension scheme of relief for the payment of pensions. This duty extends to such funds as accrue after the institution of suit as well as to those that accrued before. That the officials may be, and, as we hold, are relieved from a mandamus order to perform such duty to the extent that they have used the funds in compliance with the requirements of an unconstitutional statute, merely does away with plaintiffs' right to a part of the relief they prayed for, but it does not do away with their right under the fact situation alleged to have the remaining relief to which they are entitled, namely, to have defendants directed to comply with the Constitution which is a law superior to the statute. The supplemental complaint merely adds to the extent of the relief plaintiffs may have in the action without changing its character.

In so far as the judgment held the challenged statutes unconstitutional and directed the payment to the old age pension fund of the surplus of the five per cent of the old age pension fund allocated to administrative expense remaining after the actual expense of administration of the old age pension fund was paid and presently in the hands of and under the control of defendants, the judgment is affirmed; otherwise, it is reversed.