No. 15,413.

PENSIONERS PROTECTIVE ASSOCIATION ET AL. *v.* DAVIS ET AL.

(150 P. [2d] 974)

Decided June 19, 1944. Rehearing denied July 31, 1944.

536

Mr. SAMUEL CHUTKOW, Mr. NOAH A. ATLER, Mr. FRANK J. MANNIX, Mr. IRVING LINDNER, Mr. JOSEPH BERENBAUM, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. DONALD H. MEYER, Assistant, Mr. GEORGE K. THOMAS, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A PETITION for allowance of attorney fees and costs of suit, predicated on services rendered, and relief adjudged, in *Davis v. Pensioners Protective Association,* 110 Colo. 380, 135 P. (2d) 142. The trial court found,

that, reasonably, counsel for plaintiffs had earned ten thousand dollars, and was sympathetic toward allowance in such amount, but, concluding that the petition therefor was a suit against the state, held that it was not maintainable, and gave judgment of denial.

The reported case above mentioned contains a statement of the situation in ample detail, a sufficient summary of which is that the State Board of Public Welfare —the personnel of which were made parties—administering the old age pension fund, finding that the percentage of the fund set apart to cover the expense of such administration, produced a sum in excess of the requirements in that regard, instead of permitting the resulting surplus to remain in the pension fund in the direct interest of the pensioners, and, acting pursuant to statutory enactment, transferred such surplus to the emergency and contingent fund. The sum of our holding in the matter, was that the transfer was violative of the Constitution, hence void.

As the result of the litigation, for which the plaintiffs therein, petitioners here, were responsible, and, as of the time of our announcement, a sum approximating four hundred thousand dollars was returned to the Old Age Pension Fund, and the testimony of the Director of the Welfare Department showed that such fund would continue to be enriched by a sum considerably greater than ten thousand dollars per month. The recovery effected, immediate and prospective, was solely in the interest of the old age pensioners, not less those inactive, than those active, in its attainment. It was a class suit. The contention of the petitioners is that properly authorized disbursements made by them in the matter, and reasonable compensation to counsel whom they had prevailed upon to conduct the litigation, as appears, should constitute charges against the moneys thus restored to the pension fund, and thereby work measurable justice to those responsible therefor.

If, in the circumstances appearing, the aggregate of

the sums illegally diverted from the pension fund, and which were restored thereto by court decree in a cause prosecuted by petitioners against the State Welfare Board as trustee thereof, may be subjected to the expense involved in the accomplishment thereof, court disbursements would constitute a proper item, and counsel fees, reasonably admeasured, would enjoy like legitimacy. 14 Am. Jur., Costs, §§74-76. Opposition to the petition is not voiced by any beneficiary of the pension fund, indeed, some groups of pensioners, having no part in the suit proper, have formally endorsed the petition here and joined in the prayer for its allowance. Only the trustee of the fund opposes. Sufficiently stated, the objections, all legal in character, are: (1) The fund was never under the control of the court, hence, within the purview of the petition, is not subject to its order; (2) the inviolability of the old age pension fund precludes the petitioned allowances; (3) the petition contemplates invasion of state sovereignty, not permissible. The last point found favor with the trial court.

1. Considering that the old age pension fund, whatever the source of the moneys constituting it, is wholly special and administered by a board functioning in relation thereto, we think it may not be regarded other than as a trust fund, or the board so administering other than as trustee thereof. Indeed, the premises indicated constituted the basis of the jurisdiction exercised and decision made in the Davis case. Generally, and perhaps always, any trust fund and its administration may become the subject of judicial inquiry. In that broad view, we made and approved orders below in relation to the pension fund, whereby the trustee was required to desist from further diversion thereof, and to restore thereto that which already had been diverted. Since, in the interest of the fund, judicial control thereof was exercised in the large, consistently, as we perceive, like exercise should attend the incidents. In short, having assumed jurisdiction of a class cause to restore

diverted moneys to a trust fund, which succeeded, fairly we may not decline to consider the legitimacy of claims made against the restored portion thereof, by those responsible for its presentation and successful prosecution.

2. Petitioners do not seek to take from the pension fund, they only ask that their court disbursements, properly taxed, and compensation for their counsel, judicially ascertained and determined, be paid out of moneys which the welfare board already had diverted from that fund in the imposing sum appearing, and which petitioners caused to be restored thereto. But for the misdirected acts of the trustee thereof, the pension fund would not have been diminished, and but for the thoughtfulness of petitioners, and the painstaking efforts of counsel, there would not have been any restoration. Equity prompts the conviction that petitioners are entitled to have the pension fund regarded as of its status before they acted, and their petition determined in the light of what they accomplished in relation thereto. The petitioners, themselves pensioners, seek nothing in their own behalf. They only ask that they be reimbursed in their small outlay for costs, and which, little as it was, constituted a burden, and that counsel, not otherwise to profit therefrom, be made to feel that their successful effort in behalf of pensioners generally merits modest recognition. We cannot think that favorable action on their petition would be violative of equitable legal principles.

3. There is much to indicate that the trial judge entertained similar views, and only declined to proceed in conformity therewith because of his conviction that the recovery being sought by petitioners would be as against the state, and violative of state sovereignty. The same question has given us pause. Our studied conclusion, however, is that the point is not present. The trial judge based his judgment on *In Re Benedictine Sisters' Bill,* 21 Colo. 69, 39 Pac. 1088; *Parry v. Board of Corrections,* 93 Colo. 589, 28 P. (2d) 251; *State v.*

*Colorado Postal Company,* 104 Colo. 436, 91 P. (2d) 481. The Attorney General, arguing here, emphasized the same cases. Analysis of those authorities and the record here should furnish the answer. After reciting in the Benedictine Sisters' inquiry "that none of the provisions of the constitution referred to will be violated," we held that the Legislature legally might "make an appropriation" for the purpose of paying for private property which the state had "taken for public use without just compensation." In the Parry case, architects sought recovery for plans drawn for a building which the Board of Corrections "intended to erect * * * at the state hospital at Pueblo," which "plans were intended to be used, and were used, in an effort to obtain an appropriation from the Legislature," which failed. No fund being available out of which the architects could be compensated, the suit failed. *State v. Colorado Postal Company* was a direct suit against the state. Of course it was not maintainable, and that was the sum of our holding. Here, in marked contrast, there is a fund, wholly special, and of constitutional origin. It is administered by a board, statutorily denominated as "trustee" thereof, in which relation, as we held in the Davis case, it is subject to judicial control and direction. The fund is not dependent upon legislative appropriation. The state, in its sovereign capacity, has, and can have, no interest therein. No relief against the state, as such, was sought originally, nor does the petition under consideration involve spoliation of the sovereign or inroads in, or forays on, any state fund. The moneys involved are not public funds. They stand segregated for a special and designated use. "The term 'public funds' means funds belonging to the state * * *. The term does not apply to special funds, which are collected or voluntarily contributed, for the sole benefit of the contributors, and of which the state is merely the custodian." 50 C.J. 854, §40. Clearly, as we think, the cases on which the welfare board relies are distinguishable and not applicable.

We are convinced that petitioners are entitled to relief, and since the value of the legal services involved, as found and fixed by the trial court, is not questioned, and seems reasonable, there should be an order of allowance in that sum, as well as for all taxable costs, the whole to be discharged in accordance with the concluding paragraph of this opinion.

Our conclusion, however, should not be understood as constituting reflection upon the welfare board or the Attorney General. The original diversion of the fund was consistent with the statute, and was voided because the statute was judicially declared to be unconstitutional. The board's opposition to the petition here is in keeping with its duty to guard the fund over which it exercises control, and the appearance of the Attorney General in the same behalf conforms to his constitutional duty.

Let the judgment of denial of the petition be reversed, the trial court to order defendants in error to pay, or cause to be paid, into the registry of the district court of the City and County of Denver, the sum of ten thousand dollars ($10,000.00), and costs, out of the proportionate amount due the old age pension fund from the unexpended portion of the five (5) per cent administrative fund, to be distributed as said district court may direct.

Mr. Justice Burke dissents.

Mr. Justice Goudy did not participate.

Mr. Justice Burke dissenting.

It is difficult to demonstrate the obvious. I think the Constitution speaks for itself in lucid language. Section 7, article XXIV (the Old Age Pension Amendment) reads: "All the moneys deposited in the Old Age Pension Fund shall remain inviolate *for the purposes for which created,* and no part thereof shall be transferred to any other fund, or *used* or appropriated *for any other*

*purpose."* To me it is inconceivable that this claim for $10,000 attorneys' fees would be allowed if the section read "No part thereof shall be used for attorneys' fees or any other purpose." Certainly the payment of attorneys' fees was not one of the purposes for which the fund was created. We have now said that part of the fund shall be used therefor. That seems to me a direct violation of a plain prohibition of the Constitution.

I think it is fundamental that taxes can be levied and collected only for public purposes. The people have declared by their most solemn act, an amendment of their Constitution, that payment by the state of old age pensions to certain qualified persons is for the benefit of the whole people. The money is collected by public law, deposited with a public official and can only be paid out to private persons as provided by statute. Until so paid I think it remains the money of the state. Otherwise these taxes are levied and collected for a private purpose and while held by the treasurer are private property. If so and the treasurer is rightfully in custody and disburses the money as commanded by the statute or judicial mandate, how can any obligation rest upon the state to replace it? Yet the amendment provides that a minimum of $45 per month *shall* be paid to those qualified. If then this depletion of the fund by $10,000 reduces the available amount to a point where the payment commanded can not be made (that has happened in the past and could happen again) the state is directed by the Constitution to make good the deficit. The inevitable conclusion, as it appears to me, is that the fund is the fund of the state. If one sells supplies to a county it is for the public benefit that he be paid, but he owns no part of the fund from which payment will be made. It is provided by taxation and remains the property of the county until disbursed. If there be no money in the fund from which payment is ordinarily made the county must supply it from other sources. These attorneys have saved nothing to the state. The

result of their activity is simply that money is taken out of one of the state's pockets and put in another. The state has benefitted no penny. Those who profit by a salvage are alone liable for the expense thereof. Whoever attempts to get any portion of this Old Age Pension Fund, save as the statutory beneficiaries of its levy and collection, can do so only by an action against the state. This, I think, is such an action and it is forestalled by the recognized rule that you can not sue a sovereignty.

For the foregoing reasons I dissent.