VIRGINIANS HERITAGE SQUARE
COMPANY and Heritage Square
Associates, Inc., Petitioners,

v.

Jack Edward SMITH, The Industrial
Claim Appeals Office of the State of
Colorado, The Colorado Division of La-
bor, Douglas Archer, Dorothy Archer,
Colorado Compensation Insurance Au-
thority and High Plains Livery & Wag-
on Company, Respondents.

No. 90CA0233.

Colorado Court of Appeals,
Div. C.

Feb. 28, 1991.

Fairfield and Woods, P.C., Brent T. John-
son, Denver, for petitioners.

Richard T. Goold, P.C., Richard T. Goold,
Denver, for respondent Jack Edward
Smith.

John Berry, Denver, for respondent Colo-
rado Compensation Ins. Authority.

Duane Woodard, Atty. Gen., Charles B.
Howe, Chief Deputy Atty. Gen., Richard H.
Forman, Sol. Gen., Carol A. Finley, Asst.
Atty. Gen., Denver, for respondents Indus-
trial Claim Appeals Office and Colorado
Div. of Labor.

No appearance for respondents Douglas
Archer, Dorothy Archer and High Plains
Livery & Wagon Co.

Opinion by Justice HODGES *.

Petitioners, Virginians Heritage Square Company (Virginians) and Heritage Square Associates, seek review of the final order of the Industrial Claim Appeals Office (Panel) determining in pertinent part that they were the statutory employers of Jack Edward Smith (claimant) at the time of his work-related injury. We set aside the Panel's order.

Claimant was hired by High Plains Livery and Wagon Company (High Plains) to care for horses and lead members of the public on horse and hay rides. He was injured in August 1979 when he fell from a horse while leading a ride.

High Plains was operated by respondents Douglas and Dorothy Archer who leased three acres of land, including a stable and trails, from Virginians, a limited partnership formed to acquire land and improvements erected thereon and to hold, rent, operate, and maintain same. Heritage Square Associates was the general partner of Virginians and acted as its representative. Virginians contracted with an agent to manage the day-to-day activities of Heritage Square, including collecting rent, negotiating leases, and maintaining the property.

The business lease executed by the Archers and Virginians' agent included various general rules and regulations which, with the exception of requiring employees to wear "period costumes" like those found in a similar business establishment from 1890 to 1920, were common in the commercial leasing industry. They included, among other things, rules for unloading and loading; standards for cleanliness of the premises; use of parking spaces; specified business hours and days; and fees for maintenance of common areas used with other lessees. The record reveals that five of the twenty-three to thirty tenants of Heritage Square provided amusement rides.

The Administrative Law Judge (ALJ) found that one of the principal functions of Virginians was to provide amusement and

that, therefore, in leasing space to High Plains, petitioners were carrying out that business. On the other hand, he found that, in leasing space to others at the Heritage Square location, Virginians was not carrying out the amusement function, but rather was performing its principal function of leasing space.

In addition, the ALJ concluded that Virginians leased more than space to High Plains; instead, it "leased a comprehensive method of doing business, bridle paths, and the strong probability of success in performing the amusement function of Heritage Square." He took administrative notice of the fact that Heritage Square provides horseback rides, boating rides, and other amusement park facilities, and concluded that Heritage Square was different than the usual shopping center because it resembled an amusement park. Finally, the ALJ concluded that, because space was leased to High Plains so that High Plains could carry out the amusement function of Heritage Square, the provisions of § 8-48-103, C.R.S. (1986 Repl.Vol. 3B), as in effect at the time of these proceedings, were not applicable.

The ALJ also found that Virginians controlled the use of the property through its lease and its agent, specifically relying on the several rules and regulations included in the lease between High Plains and Virginians. In applying § 8-48-101, C.R.S. (1986 Repl.Vol. 3B), as in effect at the time of these proceedings, he reasoned that the "critical test" under that statute is whether the lessor maintains an interest in, and control over, the business of the lessee. The ALJ concluded that, but for the leasing agreement, High Plains strongly resembled a servant of Heritage Square, operating under its "strict controls and guidelines." He also drew a "clear cut inference" that, but for the leasing agreement, Heritage Square could just as well have operated the horseback riding amusement itself.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

The Panel, relying on *Standard Oil Co. v. Industrial Commission*, 38 Colo.App. 39, 552 P.2d 1029 (1976), affirmed the ALJ's determination as being supported by substantial evidence.

Petitioners' principal contention is that they were not claimant's statutory employers under § 8–48–101(1). They argue that, pursuant to the provisions of § 8–48–103(1), they are exempt from the operation of § 8–48–101(1) because they lease real property for investment purposes only, and are not involved in the business of their lessees. We agree.

### A.

■ In *Finlay v. Storage Technology Corp.*, 764 P.2d 62 (Colo.1988), our supreme court adopted a broad interpretation of the "regular business" test to analyze whether an alleged employer is a "statutory employer" under § 8–48–101. This broader standard takes into account the constructive employer's total business operation, including the elements of routineness, regularity, and the importance of the contracted service to the regular business operation of the employer. However, the statutory employment relationship is not predicated on a finding of employer control. Rather, a showing that the alleged statutory employer maintains control over the employee represents only one method of demonstrating the factor of importance of the contracted services to the alleged employer.

In *Rian v. Imperial Municipal Services Group, Inc.*, 768 P.2d 1260 (Colo.App.1988), this court determined that § 8–48–103(1) renders a lessor of real property exempt from the related provisions of § 8–48–102(1), C.R.S. (1986 Repl.Vol. 3B).

### B.

■ Generally, it is a question of fact whether a person or an entity is a statutory employer. *Kalmon v. Industrial Commission*, 41 Colo.App. 259, 583 P.2d 946 (1978). However, the correctness of a legal conclusion drawn from undisputed facts is properly a matter for the appellate court which may reject the Panel's determination. *Dorsch v. Industrial Commission*, 185 Colo. 219, 523 P.2d 458 (1974).

### C.

■ The ALJ found that "Virginians leased to the Archers a small portion of Heritage Square"; yet later, he found that the "evidence is clear and undisputed that a considerable portion of the property of Heritage Square is devoted to a stable for horses, corrals, riding paths and buildings to store feed." However, the evidence appears to support the ALJ's first finding. The business lease indicates that High Plains leased only 3 of the 179.6 acres comprising Heritage Square. In addition, trails located within the bounds of Heritage Square were used merely as access to other primary trails, which were located on public open space land. Indeed, the accident in which claimant suffered his injuries occurred on open space land outside of the boundaries of Heritage Square.

There appears to be no evidence to support the inference that, but for the leasing agreement, Virginians could, or would, operate the horseback riding amusement itself. No evidence was presented regarding the regular business operation of Heritage Square or the Virginians, either in Colorado or perhaps out-of-state. Rather, the record, in particular the business lease which was received into evidence without objection, supports the petitioners' position that they were mere lessors of the commercial real property at which the business of High Plains was physically located.

In our view, the fact that the area leased by High Plains was adapted for a livery type business does not necessarily demonstrate that Virginians was in the amusement business or that High Plains was furthering the business of the Virginians.

Nor was any evidence presented to indicate that the level of the Virginians' participation in the operation of the amusement functions conducted at Heritage Square was so "intimate and extensive" that the operation of such businesses, including that of High Plains, became part of the Virginians' own business by virtue of its conduct. *See Frazier v. Kysor Industrial Corp.*, 43

Colo.App. 287, 607 P.2d 1296 (1979), *rev'd on other grounds*, 642 P.2d 908 (Colo. 1982).

Unlike the situation in *Standard Oil Co. v. Industrial Commission, supra,* the Virginians did not have any ownership interest in the horses, saddles, stable gear, tack, or other assets belonging to High Plains or the Archers and used in their business of providing horseback rides to the public. Further, we are not persuaded that the provision of the lease which provides as additional rent, 8% of all gross sales over $2,000 per month, constitutes proof of an ownership interest.

Therefore, the findings in support of the holding that petitioners are statutory employers are not supported by the evidence,

and therefore, that ruling may not stand. *See* § 8–43–308, C.R.S. (1990 Cum.Supp.). Instead, we agree with the petitioners that § 8–48–103(1) applies to exempt them from the provisions of § 8–48–101(1).

Accordingly, the order of the Panel is set aside.

STERNBERG, C.J., and KELLY **, J., concur.

** See footnote *, ante.