**DENVER AREA LABOR FEDERATION, AFL–CIO, a Colorado corporation; and Jack Hawkins, Petitioners–Appellants,**

v.

**Natalie MEYER, Secretary of State for the State of Colorado, and Colorado Compensation Insurance Authority, Respondents–Appellees.**

No. 94CA0319.

Colorado Court of Appeals, Div. IV.

March 9, 1995.

As Modified on Denial of Rehearing April 13, 1995.*

Certiorari Granted Nov. 28, 1995.

* Ney, J., would grant.

Dallas, Holland & O'Toole, P.C., Neil D. O'Toole, Denver, for petitioner-appellant Denver Area Labor Federation, AFL–CIO, a Colorado corp.

Jack Hawkins, pro se.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Alesia M. McCloud–Chan, Asst. Atty. Gen., Denver, for respondent-appellee Natalie Meyer, Secretary of State for the State of Colo.

Colorado Compensation Ins. Authority, Michael J. Steiner, Denver, for respondent-appellee Colorado Compensation Ins. Authority.

Opinion by Judge RULAND.

Petitioners, Denver Area Labor Federation, AFL–CIO, and Jack Hawkins, appeal from a judgment affirming the Secretary of State's order dismissing their complaint against Colorado Compensation Insurance Authority (CCIA). The complaint alleged that CCIA had violated the Campaign Reform Act of 1974, § 1–45–101, et seq., C.R.S. (1980 Repl.Vol. 1B). We affirm.

In 1992, petitioners obtained the required signatures to include the "Safe Work Environment Amendment" on the general election ballot. An opposing political action group, "Coalition to Save Colorado Jobs," was organized to attempt defeat of the ballot proposal. The CCIA actively supported the Coalition's efforts by placing negative editorials in CCIA's newsletter and by sending out posters to over 40,000 CCIA subscribers urging them to vote against the proposal.

Petitioners filed a verified complaint with the Secretary of State alleging that CCIA, as a political subdivision of the state, was making an unlawful in-kind contribution to a political committee as defined by § 1–45–103, C.R.S. (1994 Cum.Supp.) of the Campaign Reform Act. Petitioners argued that approximately $30,000 of the fund CCIA administers was expended on these in-kind contributions in violation of § 1–45–116(1)(a), C.R.S. (1994 Cum.Supp.). Petitioners also alleged that CCIA and its manager were acting outside the scope of the statutory authority granted under § 8–45–102(2),

C.R.S. (1994 Cum.Supp.) of the Colorado Compensation Insurance Act (Insurance Act).

CCIA moved to dismiss the complaint, contending that its funds were neither a "public fund" nor "public money" under § 1–45–116(1)(a) because these funds consist of its subscribers' premiums. As a result, CCIA argued that it had not violated the Campaign Reform Act. The Secretary of State agreed and dismissed the complaint. Petitioners then sought judicial review pursuant to § 24–4–106(4), C.R.S. (1988 Repl.Vol. 10A).

The district court concurred with the Secretary's interpretation of the Act and affirmed the Secretary's order of dismissal.

I

■ Petitioners first contend that, because CCIA is a political subdivision of the state and because the fund it administers is a part of the state treasury pursuant to § 8–45–102(1), C.R.S. (1994 Cum.Supp.), these funds constitute "public monies." Based upon this premise, petitioners argue that any expenditures and in-kind contributions made by CCIA in support of the Coalition's efforts to defeat the ballot proposal violated § 1–45–116(1)(a). We are not persuaded.

Section 1–45–116(1)(a) of the Campaign Reform Act states in pertinent part:

No agency, department ... or any political subdivision [of the state] ... shall make any contribution or contribution in kind in campaigns involving the nomination, retention, or election of any person to any public office, nor shall any such entity expend any *public moneys* from any source, or *make any contributions in kind, to urge electors to vote in favor of or against any issue before the electorate.*

(emphasis supplied).

CCIA was created to furnish compensation insurance for employers in exchange for specified premiums. *See* §§ 8–45–103 & 8–45–106, C.R.S. (1994 Cum.Supp.). It also has the duty to review and recommend legislation pertaining to Workers' Compensation and to seek clarification of "legal concepts"

related to that Act. *See* § 8–45–101(5)(i), C.R.S. (1994 Cum.Supp.).

As petitioners correctly point out, CCIA is, by statute, a political subdivision of the state, and, for purposes of 42 U.S.C. § 1983 (1988), it has been characterized as an arm of the state by a division of this court. *Simon v. State Compensation Insurance Authority,* 903 P.2d 1139 (Colo.App.1994). However, it is not deemed a state agency under the Insurance Act except for purposes of the Colorado Governmental Immunity Act and the Risk Management Fund. *See* § 8–45–101(1), C.R.S. (1994 Cum.Supp.).

Further, CCIA is subject to regulation, as are other private insurance carriers, by the Commissioner of Insurance. *See* § 8–45–117, C.R.S. (1994 Cum.Supp.).

The funds administered by CCIA consist of premiums paid for insurance, and the manager of the fund is vested with power to expend the fund in the same manner as a "private insurance company might or could do" unless another provision of the applicable statute provides otherwise. *See* § 8–45–102(2), C.R.S. (1994 Cum.Supp.). Thus, the monies in the fund are not subject to transfer to the general fund of the state at the end of any fiscal year. *See* § 8–45–102(5), C.R.S. (1994 Cum.Supp.). Moreover, while the State Treasurer has custody of the funds, the types of investments which may be made of any surplus are strictly limited. *See* §§ 8–45–119 & 8–45–120, C.R.S. (1994 Cum.Supp.).

Finally, under certain circumstances, premiums held in the fund may be repaid to an employer. *See* § 8–45–114, C.R.S. (1994 Cum.Supp.).

Prior to the General Assembly's decision to establish CCIA or its predecessor, the fund in question was operated by the former Industrial Commission. In *Stong v. Industrial Commission,* 71 Colo. 133, 204 P. 892 (1922), the commission challenged the treasurer's decision relative to investment of the fund. In noting that the treasurer did not have decision-making authority, our supreme court stated:

> Full control of the fund is given to the commission; the custodian [treasurer] is authorized to do nothing with it except upon their order....

> [T]he constitution is not violated, *because the fund in question is not the general property of the state....*

71 Colo. at 134, 204 P. at 893 (emphasis supplied).

Subsequently, in *Pensioners Protective Ass'n v. Davis,* 112 Colo. 535, 150 P.2d 974 (1944), our supreme court came to a similar conclusion as to the meaning of the term "public funds" in the context of the old age pension. There, the court determined that the pension fund was not a part of general revenue of the state and thus could be subjected to the payment of attorney fees. In reaching this conclusion, the court noted:

> The fund is not dependent on legislative appropriation. The state in its sovereign capacity, has, and can have, no interest therein ... the monies involved are not public funds. They stand segregated for a special and designated use. 'The term public fund means funds belonging to the state ... *the term does not apply to special funds which are collected or voluntarily contributed, for the sole benefit of the contributors, and of which the state is merely the custodian.'*

112 Colo. at 540, 150 P.2d at 976 (emphasis supplied).

■ The construction of a statute is a question of law, and thus, we are not bound by the Secretary's decision if it has resulted from a misconstruction or misapplication of the law. *State Division of Employment & Training v. Parkview Episcopal Hospital,* 725 P.2d 787 (Colo.1986); *Virginians Heritage Square Co. v. Smith,* 808 P.2d 366 (Colo. App.1991). However, the Secretary's construction of the statute is entitled to great deference because her office is charged with enforcement of the law. *See* § 1–45–113, C.R.S. (1994 Cum.Supp.); *Ace West Trucking, Inc. v. Public Utilities Commission,* 788 P.2d 755 (Colo.1990); *State Division of Employment & Training v. Parkview Episcopal Hospital, supra.*

Further, we must presume that, in adopting the Colorado Compensation Insurance Act, the General Assembly was aware of our

supreme court's prior interpretation of the phrase "public money" and "public funds" in the context of funds which are collected or voluntarily contributed for the benefit of the contributors. *See People v. Green,* 734 P.2d 616 (Colo.1987).

In applying that presumption here, we note that the General Assembly has adopted a definition of the term "public funds" for purposes of legal investments by various public entities which would include the funds here. *See* § 24–75–601(2), C.R.S. (1994 Cum. Supp.) ("public funds" means any funds in the custody, possession, or control of a public entity). However, it did not incorporate this definition into the Campaign Reform Act, and it declined to make investments by CCIA subject to this Act. *See* §§ 8–45–119 & 8–45–120.

As a result, we conclude that while the insurance premiums paid to CCIA are held in public trust for specified statutory purposes, those funds do not constitute "public money." Hence, for purposes of the Campaign Reform Act, we concur with the Secretary's decision.

## II

■ Petitioners next contend that even if CCIA funds are not "public funds," CCIA still violated § 1–45–116(1)(a) because political subdivisions may not make any in-kind contributions. Petitioners' contention relies on the premise that a distinction should be drawn between direct and in-kind contributions because § 1–45–116(1)(a) contains the conjunctive "or" between the statutory language "expend any public moneys," and "make any contributions in kind." We find no merit in this contention.

■ We must avoid the interpretation of a statute that would lead to an absurd result. *See* § 2–4–201(1)(c), C.R.S. (1980 Repl. Vol. 1B); *Ingram v. Cooper,* 698 P.2d 1314 (Colo. 1985). Petitioners' construction of § 1–45–116(1)(a) would lead to such a result because CCIA could expend premiums from the fund directly to oppose the ballot measure but could not make any in-kind contributions. There being no express language or authority for this proposed construction, we decline

to conclude that such was intended by the General Assembly.

The judgment is affirmed.

PLANK, J., concurs.

NEY, J., dissents.

Judge NEY dissenting.

I dissent. Section 1–45–116(1)(a), C.R.S. (1980 Repl.Vol. 1B) prohibits expenditures by any political subdivision of this state of public monies *from any source* to urge electors either to vote for or against any issue.

There is no controversy that CCIA is a political subdivision of the state, that its funds are in the custody of the state treasury pursuant to § 8–45–102(1), C.R.S. (1994 Cum.Supp.), and that some of those funds were expended to campaign against an issue before the electorate.

Relying on *Pensioners' Protective Ass'n v. Davis,* 112 Colo. 535, 150 P.2d 974 (1944), the majority concludes that CCIA did not violate the statute because its funds are not public monies.

This reliance is misplaced. In *Davis,* the supreme court reasoned that special funds which are collected or voluntarily contributed for the sole benefit of the contributor and for which the state is merely the custodian are not considered public funds. However, the Campaign Reform Act of 1974 specifically included public funds *from any source,* and therefore, the rationale of *Pensioners' Protective Ass'n* is distinguishable.

I conclude that funds of a political subdivision of this state held by the state treasurer for specified statutory purposes constitute "public monies from any source" within the meaning of the Campaign Reform Act. *See* § 24–75–601(2), C.R.S. (1994 Cum.Supp.). Consequently, I would reverse the order of the Secretary of State dismissing the complaint.