**COLORADO FOR FAMILY VALUES, a Colorado non-profit corporation, Plaintiff–Appellant,**

v.

**Natalie MEYER, Secretary of State, State of Colorado, Defendant–Appellee.**

No. 95CA2196.

Colorado Court of Appeals, Div. V.

March 20, 1997.

Martin D. Kuhn, Colorado Springs, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, Denver, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

Plaintiff, Colorado for Family Values, a Colorado non-profit corporation, appeals from the trial court's determination that then Secretary of State Natalie Meyer (Secretary) correctly concluded that plaintiff had violated the Campaign Reform Act of 1974(Act), § 1–45–101, et seq., C.R.S. (1980 Repl.Vol. 1B). Under the Act, a group is subject to the Act's registration and reporting requirement if it seeks to influence the passage or defeat of an issue. The dispositive question presented is whether an initiative that has gone through the title setting process, but has not been formally certified for the election ballot, is an "issue" under § 1–45–103(8), C.R.S. (1980 Repl.Vol. 1B). We agree with the Secretary's conclusion that such an initiative is an "issue," and therefore, we affirm.

In November 1992, Colorado voters approved an amendment to the state constitution (Amendment 2) which provided that neither the state nor any of its agencies, po-

litical subdivisions or other governmental entities could enact or enforce any statute, regulation, ordinance, or policy which would grant minority status, quota preference, or protected status to homosexual, lesbian, or bisexual orientation, conduct, practices, or relationships. Plaintiff had registered as a political committee in order to work for the passage of Amendment 2.

Following the passage of Amendment 2, a group of citizens began an effort to repeal it. Their proposed initiative went through the title setting process in May 1993, and was known as "Protection from Discrimination II" (PDII).

In the summer of 1993, plaintiff's newsletter, although not mentioning PDII by name, warned that organizations were seeking to repeal Amendment 2. The newsletter stated that its goal was to raise $1 million for its "Amendment 2 Legal Defense Fund." Plaintiff accepted contributions to this fund, but did not file a statement of registration as a political committee or report the contributions it received.

Ultimately, PDII was not placed on the election ballot because its proponents did not present, within six months of title setting, the required number of signatures to the Secretary.

In the meantime, however, a citizen had filed a complaint with the Secretary that plaintiff was in violation of the Act's registration and reporting requirements. Pursuant to § 1–45–113(1)(e), C.R.S. (1996 Cum. Supp.), the Secretary assigned the matter to an Administrative Law Judge (ALJ) for a hearing.

In his initial decision, the ALJ determined that, even though PDII ultimately had not been placed on the election ballot, the repeal attempt constituted an "issue" under the Act, and plaintiff, therefore, was required to file a statement of organization and report the contributions it had received.

In February 1994, after review, the Secretary adopted the ALJ's decision, concluding that:

> [B]ased upon the wording of the Act, the purpose of the Act, and the rules of statutory construction, [plaintiff] was required

to file a statement of organization as a political committee as a result of its acceptance of contributions for the defeat of any Amendment 2 repeal effort, even though that repeal effort did not result in a ballot issue being presented to the electorate.

Plaintiff then sought review of the Secretary's decision in the district court pursuant to § 24–4–106, C.R.S. (1988 Repl.Vol. 10A), and the district court affirmed the Secretary's order.

■ On appeal, plaintiff contends that this was error because the term "issue" refers only to measures that are "to be submitted" to the electorate—that is, those measures that are actually placed on the ballot for a vote by the people. We disagree, and hold that the term "issue" as used in the Act includes an initiative that, although not ultimately placed on the ballot, has gone through the title setting process.

Section 1–45–103(10), C.R.S. (1996 Cum. Supp.) defines the scope of political activity subject to the Act:

> 'Political committee' means any two or more persons who are elected, appointed, or chosen or who have associated themselves or cooperated for the purpose of accepting contributions or contributions in kind or making expenditures to support or oppose a candidate for public office at any election or seek to influence the passage or defeat of any issue.

As pertinent here, "issue" is itself defined in § 1–45–103(8), C.R.S. (1980 Repl.Vol. 1B), in pertinent part, as:

> any proposition or initiated or referred measure which is to be submitted to the electors for their approval or rejection.

If a group or organization is a political committee under § 1–45–103(10), it must file a statement of organization, and must report both the sources of its contributions and its expenditures. *See* §§ 1–45–106 & 1–45–108, C.R.S. (1980 Repl.Vol. 1B).

■ A court's primary task in statutory construction is to ascertain and give effect to the legislative purpose underlying a statutory enactment. *Colorado Common Cause v. Meyer*, 758 P.2d 153 (Colo.1988). Here, al-

though the appropriate construction of a statute is a question of law, and appellate courts engage in *de novo* review, the Secretary of State's construction of the Act is entitled to great deference because her office is charged with enforcement of the law. *Denver Area Labor Federation v. Meyer*, 907 P.2d 638 (Colo.App.1995), *rev'd on other grounds*, 924 P.2d 524 (Colo.1996).

Once it has been through the title setting process, an initiative's precise language has been formally determined, and the particular question that its proponents seek to submit to the electorate has been established. Regardless whether an "initiated measure" becomes an "issue" at any time prior to the setting of the ballot title, a question we need not decide here, certainly the term "initiated measure," as referenced in § 1–45–103(8), is sufficiently broad to include an initiative that has been through the title setting process but has not been placed on the ballot. *See* Colo. Const. art. V, § 1(2) (every petition to place on the ballot an initiative whose title has been set "shall include the full text of the measure so proposed").

However, whether an initiative will be placed on the ballot will depend on whether the proponents of the initiative will be able to garner the necessary number of signatures. *See* Colo. Const. art. V, § 1(2). Hence, plaintiff argues, since, under § 1–45–103(8), an initiated measure is one that "is to be submitted" to the electorate, that statutory section necessarily refers only to those measures which will, in fact, be voted on in the next election. Here, as noted, PDII was not placed on the ballot. Accordingly, plaintiff argues, PDII was not an "issue" under the Act and, therefore, its efforts to oppose it did not implicate the registration and reporting requirements of the Act. We disagree.

■ A statute must be interpreted in light of its stated legislative purpose. *See Walgreen Co. v. Charnes*, 819 P.2d 1039 (Colo. 1991) (one of the best guides to intent is the declaration of policy which forms the initial part of an enactment). A statute will not be narrowly interpreted when it is designed to declare and enforce a principle of public policy. *See Phillips v. Monarch Recreation Corp.*, 668 P.2d 982 (Colo.App.1983).

Here, § 1–45–102, C.R.S. (1980 Repl.Vol. 1B) provides:

> The general assembly hereby finds and declares that the interests of the people of this state can be better served through a more informed public ... Therefore, it is the purpose of this article to promote public confidence in government through a more informed electorate.

By this language, the General Assembly has made plain that the Act's purpose is to ensure that voters are informed about the influences on the electoral process. By the filing requirements and the reporting requirements for contributions and expenditures concerning political issues set forth in the Act, public confidence in government is to be enhanced through a more informed electorate. *See Colorado Common Cause v. Meyer, supra* (fn. 12) ("It is clear [that] the intent of the legislature was focused on as complete a disclosure as possible of the financing which influences the outcome of elections.").

As pertinent here, a measure that has gone through the title setting process has been formalized for the express purpose of submitting it to the voters. *See In re Proposed Initiative on Education Tax Refund*, 823 P.2d 1353, 1355 (Colo.1991) ("The purpose of the title setting process is to ensure that both persons reviewing an initiative petition and the voters are fairly and succinctly advised of the import of the proposed law."). Similarly, a measure for which signatures are being gathered is intended "to be submitted" to the voters. Hence, given the clearly expressed intent of the General Assembly to provide voters with information about those who would sway their opinions on the political issues they will decide, the term "issue" must be construed broadly, not restrictively, to include an initiative which has gone through the title setting process as a measure which "is to be submitted" to the electorate.

Moreover, in attempting to effect the ends for which the statute was enacted, a court may properly consider the consequences of a particular construction. *See* § 2–4–203(1)(e), C.R.S. (1980 Repl.Vol. 1B); *United States v.*

*Wilkinson,* 686 P.2d 790 (Colo.1984). And, when construing a statute, we presume that the General Assembly intends a just and reasonable result that favors the public interest over any private interest. *Allen v. Charnes,* 674 P.2d 378 (Colo.1984).

Here, under plaintiff's interpretation of the Act, groups would be free to raise and spend money, without limit and without disclosure to the public, to convince electors to sign or not to sign a particular petition. Such groups would thus be in a position to exert significant influence on the success or failure of an initiative—including whether the initiative would be placed on the ballot and put to a public vote at all—without having their activities subject to the Act. Such a result is clearly at odds with a statute enacted to open to public view the financial contributions of those seeking to affect the public's responses. *See Colorado Common Cause v. Meyer, supra* (fn. 12) (The Campaign Reform Act "was presented for the final vote [with] the belief that it was the most thorough and loophole-proof campaign reform bill in the United States.").

Hence, we hold that the term "issue" in § 1–45–103(10) includes an initiated measure that has gone through the title setting process, and plaintiff's activities here are thus subject to the reporting and registration requirements of the Act. We agree with the Secretary that a contrary interpretation would compromise the purpose of the Act, leave the public uninformed about powerful influences on the electoral system, and diminish public confidence in government.

The judgment is affirmed.

ROTHENBERG and ROY, JJ., concur.