Woodrow W. **WATSON**, Plaintiff–Appellee and Cross–Appellant,

v.

**VOUGA RESERVOIR ASSOCIATION**, Defendant–Appellant and Cross–Appellee.

No. 97CA1090.

Colorado Court of Appeals, Div. IV.

Nov. 27, 1998.

Russell Wilderson O'Hayre & Dawson, Gunnison, Colorado; Law Office of Gary L. Crandell, Gary L. Crandell, Denver, Colorado, for Plaintiff–Appellee and Cross Appellant

Williams, Turner & Homes, P.C., Mark A. Hermundstad, Mark E. Hamilton, Grand

Junction, Colorado, for Defendant–Appellant and Cross–Appellee

Opinion by Judge NEY.

Defendant, Vouga Reservoir Association (VRA), appeals the trial court's judgment in favor of plaintiff, Woodrow Watson, based on its conclusion that the assessment of costs of maintenance of VRA's reservoir was not authorized by §7–42–104(1), C.R.S.1998. Watson cross-appeals, challenging the trial court's refusal to order VRA to return his shares in VRA and its calculation of the damages awarded to him. We reverse the judgment in favor of Watson.

VRA was organized under §7–42–101, et seq, C.R.S.1998, to build and maintain a reservoir. The majority shareholders owned sixty-five percent of the shares in VRA, and Watson owned the remaining thirty-five percent.

In 1994, after a routine inspection of Vouga Reservoir, the Colorado State Engineer's office discovered a defect in the reservoir's outlet pipe. VRA unsuccessfully attempted to correct the defect, and subsequently, the Colorado Division of Water Resources ordered that no water be stored in the reservoir until appropriate remedial measures were taken.

The majority shareholders authorized VRA to levy a pro rata assessment on its shareholders, pursuant to §7–42–104(1) to pay for the remedial measures, which cost in excess of $1 million. Because Watson refused to pay, VRA forfeited his shares, leaving the majority shareholders as VRA's sole shareholders.

Watson then brought this action against VRA to enjoin the dam repair and to dissolve and liquidate VRA. He unsuccessfully moved for a preliminary injunction to prevent VRA's forfeiture of his shares. His amended complaint alleged that VRA had converted his shares and requested attorney fees and treble damages, pursuant to §18–4–405, C.R.S. 1998.

Watson did not dispute that the remediation which was approved by the majority, was required to maintain the reservoir. However, he asserted that the extent of the required work constituted a reconstruction rather than a repair authorized by §7–42–401(1).

Following a bench trial, the court concluded that VRA's actions exceeded the authority accorded it under §7–42–104(1). The court also determined that, by forfeiting Watson's shares, VRA had committed theft under §18–4–401, C.R.S.1998, and had converted his shares. Although the court did not award Watson treble damages, it did award him attorney fees and damages equal to thirty-five percent of the value of VRA, as calculated at the time of the conversion, plus interest.

After a hearing on post-trial motions filed by the parties, the court dismissed all claims against the majority shareholders individually, affirmed the award of attorney fees and damages to Watson, and ordered him to transfer his stock to VRA.

The pertinent language of §7–42–104(1) provides:

> If any corporation owning any ... reservoir for storing water for irrigation purposes deems it necessary to raise funds *to keep its ... reservoir in good repair* or to pay any indebtedness theretofore contracted or the interest thereon, the corporation shall have power to make an assessment on the capital stock thereof, to be levied pro rata on the shares of stock payable in money, labor, or both, for the purpose of keeping the property of the corporation in good repair and for the payment of any indebtedness or interest thereon. (emphasis added)

■ The dispositive issue in this action is the meaning of "to keep its ... reservoir in good repair," in the above statute. The trial court concluded that the extent of the remedial measures for which VRA proportionately assessed the shareholders was not authorized by §7–42–104(1) because the measures constituted reconstruction of the dam, rather than "repair." We disagree with the trial court.

■ The standard of review for statutory construction is *de novo*, and an appellate court need not defer to the trial court's con-

clusions. *Colorado for Family Values v. Meyer,* 936 P.2d 631 (Colo.App.1997).

■ If the meaning of statutory words is clear and unambiguous, a court should apply that language as written. *Lymburn v. Symbios Logic,* 952 P.2d 831 (Colo.App.1997).

In our view, the meaning of the phrase at issue is apparent on its face.

Watson's argument, which the trial court adopted, focuses on the word "repair" as distinguished from "reconstruction." He asserts a levy for costs of "reconstruction" is not authorized under § 7–42–104(1). However, we conclude that the meaning of the statute is discerned from the entire phrase "to keep its reservoir in good repair."

It is undisputed that VRA's sole purpose was to supply water for irrigation to its shareholders' land. The state engineer ordered VRA to repair the reservoir or shut it down. It follows that if VRA is to fulfill its purpose, the restoration approved by the majority shareholders is required to keep the reservoir in good repair. Therefore, we conclude that the assessment for the repair cost was authorized by §7–42–104(1).

Because VRA was authorized to levy the assessment against its shareholders, including Watson, VRA's forfeiture of his shares constituted neither conversion nor theft, and thus, Watson is not entitled to the return of his shares, or any damages or attorney fees.

The judgment is reversed.

KAPELKE and ROY, JJ., concur