528 P.2d 623

The NAVAJO TRIBE and the City of Phoenix, a municipal corporation, Petitioners,

City of Tucson, a municipal corporation, Intervenor,

v.

ARIZONA DEPARTMENT OF ADMINISTRATION, the Finance Division thereof, Raymond S. Long, in his official capacity as Director, and T. G. Hawkins, in his official capacity as Assistant Director, Respondents.

No. 11683.

Supreme Court of Arizona,
En Banc.

Nov. 18, 1974.

Rehearing Denied Jan. 8, 1975.

Brown, Vlassis & Bain, P. A. by Ronald E. Lowe, Joe R. Purcell, City Atty., of Phoenix, by Robert A. Slonaker, Phoenix, for petitioners.

James D. Webb, City Atty. of Tucson by Phyllis P. Sugar and Frederick S. Dean, Tucson, for intervenor.

N. Warner Lee, Atty. Gen., by Fred W. Stork, III, Phoenix, for respondents.

HAYS, Chief Justice.

The controversy presented by this special action in the nature of mandamus was engendered by an opinion of the Attorney General of Arizona, Department of Law Opinion No. 74–12. Based on that opinion, the Arizona Department of Administration has refused to accept obligations and make payments that the Arizona Department of Economic Security (DES) contracted for with The Navajo Tribe and the City of Phoenix, petitioners, and the City of Tucson, and intervenor herein. The job training and employment projects at issue are financed by federal funds made available to The Navajo Tribe and to the two cities for programs to be administered by DES.

The Navajo Concentrated Employment Program (CEP) is funded in the following manner: The Office of Navajo Economic Opportunity. (ONEO), a department of The Navajo Tribe, has entered into a prime contract with the United States Department of Labor. Under the terms of that contract, the federal government provides all of the monies necessary to fund CEP on the condition that ONEO enter into a subcontract for services with DES. ONEO has entered into such a subcontract with DES whereby DES has agreed to administer CEP. ONEO has agreed to reimburse DES for the direct costs that DES incurs in administering CEP as well as its indirect administrative expenses incurred. DES is reimbursed as ONEO receives its funds from the federal government.*

The City of Phoenix has also entered into a prime contract with the United States Department of Labor which requires that it enter into a subcontract with DES for the purpose of operating its CEP program. DES submits vouchers for expenditures to the city which makes payment from federal funds.

ARS § 35–142 provides, with exceptions, that "[a]ll funds received for and belonging to the state shall be . . . credited to the general fund . . . ." Article 9, section 5 of the Arizona Constitution, ARS, gives supreme power in matters of appropriations to the legislature. Crane v. Frohmiller, 45 Ariz. 490, 45 P.2d 955 (1935). The rationale is, of course, that the people's money may not be spent without their consent. Crane v. Frohmiller, *supra*. We would, however, agree with the reasoning of another court in Button's Estate v. Anderson, 112 Vt. 531, 28 A.2d 404 (1942).

> "The clear construction to be given to this provision is that they intended to have it apply only to such funds, the equitable as well as the legal rights to which are in the state . . . ." 28 A. 2d at 410.

Payment of funds into the state treasury does not necessarily vest the state with title to those funds. Ross v. Gross, 300 Ky. 337, 188 S.W.2d 475 (1945). Only monies raised by the operation of some general law become public funds. Cyr & Evans Contracting Co. v. Graham, 2 Ariz.App. 196, 407 P.2d 385 (1965). Custodial funds are not state monies. MacManus v. Love,

---

\* This statement of facts is taken from the brief of counsel for The Navajo Tribe.

499 P.2d 609 (Colo.1972). The term "public funds" refers to funds belonging to the state and does not apply to funds for the benefit of contributors for which the state is a mere custodian or conduit. Pensioners Protective Assn. v. Davis, 112 Colo. 535, 150 P.2d 974 (1944). The same is true of the term "general fund." This is made clear by the language of ARS § 35–142, "funds received for and belonging to the state." It is within the power of the legislature to make appropriations relating to state funds, but funds from a purely federal source are not subject to the appropriative power of the legislature. MacManus v. Love, *supra.*

 DES is empowered to enter into such contracts as have been made with The Navajo Tribe and the cities of Phoenix and Tucson in accord with ARS §§ 46–134(4), 41–1954(6) and 41–1954(7):

§ 46–134. "The state department [of economic security] shall . . .

."4. Assist other departments, agencies and institutions of the state and federal governments, when requested, by performing services in conformity with the purposes of this title."

§ 41–1954. "[T]he department shall:

"6. Make contracts and incur obligations within the general scope of its activities and operations subject to the availability of funds.

"7. Contract with or assist other departments, agencies and institutions of the state, local and federal governments in the furtherance of its purposes, objectives and programs."

 The money provided in these instances by the federal government to petitioners and to the intervenor determines the availability of funds with which DES operates for purposes of administering these social services contracts. It cannot be said that the programs at issue are not compatible with the activities and objectives of DES. *See* ARS §§ 46–134, 41–1953 and 41–1954. It is the spirit of the law which is considered and which prevails. City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49 (1966).

DES is reimbursed not only for direct costs of the programs but for the indirect costs of administration. This is clearly permitted by the language of ARS § 46–137: "Administrative expenses shall be paid from funds made available for that purpose . . . by the federal government or any of its agencies." The prime contracts with the Department of Labor provide that certain of the funds will be used to reimburse the subcontracting agency, DES, for administrative costs. Thus, the administrative costs are being paid from federal funds made available for that purpose.

In light of the above opinion, the respondents are directed to pay the obligations that DES has incurred in fulfilling the contractual duties made with the petitioners.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.