243 P.3d 619

**ARIZONA FARM BUREAU FEDERATION; Arizona Wheat Growers Association; Yuma Fresh Vegetable Association; and Western Growers Association, Plaintiffs/Appellees,**

**Arizona Grain Research and Promotion Council, an agency of the State of Arizona, Plaintiff–Intervenor/Appellee,**

v.

**Jan BREWER, in her capacity as Governor of the State of Arizona, Defendant/Appellant.**

No. 1 CA–CV 09–0756.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 12, 2010.

Michael A. Parham, Phoenix, Attorney for Plaintiff/Appellees.

The Law Offices of Curtis, Goodwin, Sullivan, Udall & Schwab, P.L.C. By Michelle Swann, Kelly Y. Schwab, Phoenix, Attorneys for Plaintiff–Intervenor/Appellee.

Terry Goddard, Attorney General By William A. Richards, Assistant Attorney General, Mark P. Bookholder, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellant.

## OPINION

IRVINE, Judge.

¶ 1 The Governor of the State of Arizona (the "Governor")[1] challenges the trial court's ruling in favor of Arizona Farm Bureau Federation, Arizona Wheat Growers Association, Yuma Fresh Vegetable Association, Arizona Grain Research and Promotion Council and Western Growers Association (collectively, "Appellees"). We conclude that the disputed fund transfers were not prohibited by law. Therefore, we reverse the judgment of the trial court and remand for entry of judgment in favor of the Governor.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On April 18, 2008, the Arizona Legislature passed, and the Governor signed, House Bill 2620 ("HB 2620"). 2008 Ariz. Sess. Laws, ch. 53 (2d Reg.Sess.). In an attempt to balance the 2007–2008 state budget, HB 2620 directed the transfer of certain monies from 104 state funds to the state general fund. Three affected funds, which are the subject of this appeal, were: (1) the Arizona Iceberg Lettuce Research Council Fund ("Lettuce Fund"); (2) the Arizona Citrus Research Council Fund ("Citrus Fund"); and (3) the Arizona Grain Research Fund ("Grain Fund"), (collectively, the "Agricultural Funds").[2] The Lettuce Fund is administered by the Arizona Iceberg Lettuce Research Council ("Lettuce Council"), the Citrus Fund by the Arizona Citrus Council ("Citrus Council") and the Grain Fund by Arizona Grain Research and Promotion Council ("Grain Council") (collectively, the "Councils").

¶ 3 On August 29, 2008, groups representing a variety of agricultural producers filed suit against the Governor and Arizona State Treasurer Dean Martin ("Treasurer").[3] The complaint alleged HB 2620 was unconstitutional and sought injunctive relief and declaratory judgment. Appellees filed motions for summary judgment, and the Governor filed a cross-motion for summary judgment. After hearing oral argument, the trial court granted Appellees' motions for summary judgment and denied the Governor's motion. The trial court found that:

> [T]he monies in the funds at issue consist of fees and donations collected for specific purposes; specifically, the marketing, promotion and research of agricultural products produced in the State of Arizona.

> The Court further finds that the fees and donations used in furthering agricultural interest are not general fund monies that can be swept or utilized for any legislative purpose. Instead, deposits in the various funds are earmarked as set forth in their enabling statutes and the Legislature cannot modify the purposes without legislation allowing such modification.

¶ 4 The court entered a final judgment ordering the Governor to return the monies

---

1. The lawsuit originally named Governor Janet Napolitano, who signed the bill, as defendant. Governor Jan Brewer succeeded Governor Napolitano on January 21, 2009. For purposes of this appeal, Governor Brewer assumes Governor Napolitano's role. See Ariz.R.Civ.P. 25(e)(1) (stating that "[w]hen a public officer is a party to an action in an official capacity and during its pendency ... ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.").

2. $41,400 was transferred from the Lettuce Fund, $40,000 from the Citrus Fund, and $80,000 from the Grain Fund.

3. In November 2008, the trial court permitted the Grain Council to intervene in the action.

transferred from the Agricultural Funds. The Governor timely appealed.[4]

## DISCUSSION

¶ 5 The Governor argues the trial court erred when it entered judgment in favor of Appellees. Specifically, she asserts HB 2620 is constitutional legislation that permitted the transfer of the Agricultural Funds to the general fund.

¶ 6 We review de novo a grant of summary judgment determining the constitutionality of legislation and interpretation of statutes. *Bentley v. Bldg. Our Future*, 217 Ariz. 265, 270, ¶ 11, 172 P.3d 860, 865 (App.2007) (grant of summary judgment and statutory interpretation); *Long v. Napolitano*, 203 Ariz. 247, 253–54, ¶ 15, 53 P.3d 172, 178–79 (App. 2002) (constitutionality of legislation). If possible, we will construe HB 2620 "to give it a reasonable and constitutional meaning." *Long*, 203 Ariz. at 254, ¶ 16, 53 P.3d at 179.

¶ 7 We begin by recognizing that the legislature has broad powers to decide how state funds are prioritized and used. Ariz. Const. art. 4, pt. 2, § 20. "[T]he power of the legislature is plenary and unless that power is limited by express or inferential provisions of the Constitution, the legislature may enact any law which in its discretion it may desire." *Whitney v. Bolin*, 85 Ariz. 44, 47, 330 P.2d 1003, 1004 (1958); *see also Citizens Clean Elections Comm'n v. Myers*, 196 Ariz. 516, 519–20, ¶ 10, 1 P.3d 706, 709–10 (2000) (legislature's powers are limited only by prohibitions in the state and federal constitutions). When a legislative enactment is challenged, the courts "must find that the [a]ct is clearly prohibited by either the Federal Constitution or the Constitution of Arizona in order to hold it invalid." *Earhart v. Frohmiller*, 65 Ariz. 221, 224, 178 P.2d 436, 438 (1947).

¶ 8 Certain restrictions have been recognized on the legislature's authority to make fund transfers such as those at issue here. First, express provisions of the Arizona Constitution prohibit the legislature from touching certain funds. For example, fuel tax revenues must be expended on costs associated with public highways, roads and streets, traffic law enforcement, and the Arizona Highways Magazine. Ariz. Const. art. 9, § 14. Similar restrictions are in place for pension funds for public employees. *Id.* at art. 29, § 1. Monies in permanent funds established for state and school lands may not be transferred into another permanent fund or used "for any object other than that for which the land producing the same was granted or confirmed." *Id.* at art. 10, § 7(B). Similarly, the rent from school lands is to be apportioned solely for common and high school education in Arizona. *Id.* at art. 11, § 8(B).

¶ 9 Second, the provisions of the Arizona Constitution known as the Voters Protection Act limit the legislature's ability to "divert funds ... allocated to a specific purpose by an initiative measure approved by a majority of the votes." Ariz. Const. art. 4, pt. 1, § 1(6)(D). "The legislature may take such action only with a three-fourths vote of each house and, even then, its actions must further the purpose of the initiative." *Ariz. Early Childhood Dev. & Health Bd. v. Brewer*, 221 Ariz. 467, 469, ¶ 6, 212 P.3d 805, 807 (2009).

¶ 10 Third, courts have held that the legislature does not have unlimited authority over funds held by the state that, although technically public funds, are actually owned by or held subject to the claims of third parties. *See Navajo Tribe v. Ariz. Dep't of Admin.*, 111 Ariz. 279, 528 P.2d 623 (1974). In *Navajo Tribe*, federal funds received pursuant to a federal contract were placed into the state's general fund for particular purposes relating to job training and employment projects. A dispute arose over whether these funds could be expended without specific legislative approval. Our supreme court explained:

Payment of funds into the state treasury does not necessarily vest the state with title to those funds. Only monies raised by the operation of some general law become public funds. Custodial funds are not state monies. The term 'public funds'

---

4. The Treasurer is not a party to this appeal.

refers to funds belonging to the state and does not apply to funds for the benefit of contributors for which the state is a mere custodian or conduit. The same is true of the term 'general fund.' This is made clear by the language of ARS § 35–142, 'funds receive [sic] for and belonging to the state.' It is within the power of the legislature to make appropriations relating to state funds, but funds from a purely federal source are not subject to the appropriative power of the legislature.

*Id.* at 280–81, 528 P.2d at 624–25 (citations omitted). Appellees describe the protections applied in *Navajo Tribe* as protecting funds held by the state in trust or as a custodian. Although the legal basis for these protections has not been fully developed in prior cases, we have recently interpreted *Navajo Tribe* as applying to funds held by the state on behalf of a third party. *Arpaio v. Maricopa County Bd. of Supervisors*, 225 Ariz. 358, 363, ¶¶ 16–17, 238 P.3d 626, 631 (App.2010). The third party with an interest in the funds may be the source of the funds, as in *Navajo Tribe* (federal funds), or someone claiming a benefit from the use of the funds, such as a pensioner or insured.[5]

¶ 11 The trial court's ruling essentially relied on a separate limitation on the legislature's power. It found the legislature could not transfer funds that had been collected for a specific purpose without specifically modifying the statutory purposes. In other words, the monies in the funds could only be used for the purposes for which the funds were created unless the legislature amended the authorizing statutes. In effect, the trial court found the legislature had limited its own authority over the funds through previous legislation.

¶ 12 In this case, no express provision of the Arizona Constitution limits the legislature's power over the Agricultural Funds.

Equally, none of the funds were established by a public vote, so none are protected by the Voter Protection Act. Therefore, any limits on the legislature's authority must be based on the limits contained in the statutes governing the funds or the interests of third parties in the funds. We first address the limitations contained within the statutes themselves.

¶ 13 The enabling statutes for the Agricultural Funds ("enabling statutes") provide that the Councils have various statutorily defined powers and duties, including the assessment and collection of fees. Ariz.Rev.Stat. §§ 3–468.04(C), –526.04(C) (Supp.2009), –587(B) & (C) (2002).[6] Fees collected pursuant to the Agricultural Funds' fee collection statutes are deposited into each respective council's account, which are administered by the Arizona Department of Agriculture. A.R.S. §§ 3–468(3) (2002), –468.06(A), –526.06(A) (Supp. 2009), –590(A) (2002). Although the specific statutory language varies somewhat, each council is generally authorized to expend monies for research and similar assistance to its industry. A.R.S. §§ 3–468.02(B),–526.02(B),–584(B).

¶ 14 Appellees argue, and the trial court found, that the legislature cannot transfer the funds as long as the purposes for which the monies can be expended are limited by the specific terms of the enabling statutes. We disagree. We recently addressed this argument in a similar context and held, as applicable here, that "[b]ecause the legislature established the [funds], it can redirect the use of those funds without specifically amending the enabling statutes, provided the change is constitutional." *Arpaio*, 225 Ariz. at 363, ¶ 18, 238 P.3d at 631. In that case, we noted that the restrictions in the enabling statutes were not restrictions on the uses the

---

5. To the extent a third party asserts a claim as a beneficiary of the funds, the legal rights claimed are analogous to a claim that the person has a vested right in the funds. "A vested right 'is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust.' " *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 205, ¶ 15, 972 P.2d 179, 189 (1999) (quoting *Hall v. A.N.R. Freight Sys.*, 149

Ariz. 130, 140, 717 P.2d 434, 444 (1986)); *see also Baker v. Ariz. Dept. of Revenue*, 209 Ariz. 561, 568 n. 4, ¶ 34, 105 P.3d 1180, 1187 n. 4 (App.2005) (reasoning that a taxpayer does not have a vested right in a tax code provision).

6. We cite the current versions of the applicable statutes when no revisions material to this opinion have occurred.

state could make of the funds, but only on the uses the County could make of the funds. Similarly, the statutory provisions at issue here limit how the Councils can spend their money; they are not limits on the legislature's authority.

¶ 15 Appellees also argue the Agricultural Funds are "earmarked" for certain enumerated statutory purposes and the earmarking removal "is not a matter to be included in an appropriation bill." We disagree. Our supreme court has held that fund transfers may be included in appropriation bills. *Rios v. Symington,* 172 Ariz. 3, 11, 833 P.2d 20, 28 (1992). Moreover, we view the "earmarking" argument as essentially the same as the argument that the legislature must first amend the statute, an argument we reject in this case.

■ ¶ 16 This leaves the central argument of this case—whether the state holds the monies as a trustee or custodian. The Governor argues that the Agricultural Funds are not held in trust or in a custodial capacity. Appellees contend, however, that statutory authority "makes it clear" the State holds the Agricultural Funds in trust or in a custodial capacity and that "neither the Legislature nor [the Governor] has any authority to spend money in" the funds.

¶ 17 Our primary goal when interpreting statutes is to give effect to the legislature's intent. *DeVries v. State,* 221 Ariz. 201, 204, ¶ 6, 211 P.3d 1185, 1188 (App.2009). When a statute's language is plain and unambiguous, we follow the text as it is written. *Bentley,* 217 Ariz. at 270, ¶ 13, 172 P.3d at 865. It is a well-established principle of statutory construction that we "will not read into a statute something which is not within the express manifest intention of the Legislature as gathered from the statute itself, and similarly the court will not inflate, expand, stretch or extend the statute to matters not falling within its expressed provisions." *Patches v. Indus. Comm'n,* 220 Ariz. 179, 182, ¶ 10, 204 P.3d 437, 440 (App.2009) (citation omitted).

¶ 18 Both the Lettuce and Citrus Funds' fee collection statutes provide that after the fees are assessed and collected, "[t]he *grower-shipper, shipper or handler is a trustee* of the monies until they are paid to the [Lettuce and Citrus Councils]." A.R.S. §§ 3–526.04(C), –468.04(C) (emphasis added). The Grain Fund fee collection statute makes no reference to a trustee or trust relationship. A.R.S. § 3–587(B), (C) (providing that fees are to be assessed, collected and remitted to the Grain Council). Other than the references to the producer acting as a trustee, the statutes make no reference to the Councils holding the funds in trust for anyone.

¶ 19 The enabling statutes further provide that the Treasurer may invest the monies in each fund pursuant to A.R.S. § 35–313 (Supp.2009). A.R.S. §§ 3–468.06(C), – 526.06(C), –590(A). The statutes make no reference to the Treasurer holding the Agricultural Funds in trust or in a custodial capacity. *Id.* In a declaration, the Deputy Treasurer of Operations at the Treasurer's office acknowledged that fees collected pursuant to the Agricultural Funds' fee collection statutes are deposited into an account where the funds are comingled with other public monies. He also stated the funds are not held in a trust capacity or special trust account.

■ ¶ 20 Under these circumstances, we cannot conclude that the enabling statutes meet the general requirements for a trust. "The essential elements of a trust are a competent settlor and a trustee, clear and unequivocal intent to create a trust, ascertainable trust res, and sufficiently identifiable beneficiaries." *Golleher v. Horton,* 148 Ariz. 537, 543, 715 P.2d 1225, 1231 (App.1985). Furthermore, "A trust is not created … unless the terms of the trust provide a beneficiary who is ascertainable at the time." Restatement (Third) of Trusts § 44 (2003).

¶ 21 As we read them, the enabling statutes do not set forth an explicit intent to create a trust, a settlor, or sufficiently identifiable beneficiaries. In contrast, the legislature has explicitly provided for the creation of a trust in a statutory provision involving agricultural fees. A.R.S. § 3–1087(A) (Supp. 2009) (fees collected from cotton crop producers "shall be deposited and held in trust"); *see also* Ariz. Const. art. 10, § 1 (directing the state to hold lands in trust); *Id.* at art. 29, § 1(B) (noting the assets of public retire-

ment systems "are separate and independent trust funds"). We decline to read a trust relationship into the Agricultural Funds' statutes that is not explicitly stated. *See Backus v. State,* 220 Ariz. 101, 106, ¶ 22, 203 P.3d 499, 504 (2009) (refusing to read into statute term not included by legislature).

¶ 22 Appellees argue, however, that because the fee collection statutes reference A.R.S. § 35–313, the Agricultural Funds "contain[ ] 'trust monies,' held by the State Treasurer as a custodian." Section 35–313 provides for the investment of "trust" monies. As previously stated, the Agricultural Funds' fee collection statutes provide that, pursuant to A.R.S. § 35–313, the Treasurer shall invest the funds per each respective council's request. A.R.S. §§ 3–468.06(C), –526.06(C), –590(A). Appellees read this as an expression of the legislature's intent that the funds be held in trust. The overall statutory scheme indicates otherwise.

¶ 23 Title 35 defines "treasury monies" as "all monies in the treasury of this state or coming lawfully into the possession or custody of the state treasurer." A.R.S. § 35–310(4) (Supp.2009). "Trust monies" are "treasury monies, other than operating monies, that are entrusted to the state treasurer for preservation and investment." A.R.S. § 35–310(5). In turn, "operating monies" are treasury monies "the interest from which is paid to the state general fund." A.R.S. § 35–310(2). Appellees argue that because operating monies are defined as monies whose interest is credited back to the general fund, and the Agricultural Funds have their interest instead transferred back to their accounts, the monies must be trust monies. For purposes of the narrow definitions of Title 35 this may be true, but we do not read the reference to A.R.S. § 35–313 so broadly.

¶ 24 The primary intent of the reference to A.R.S. § 35–313 appears to allow the Councils to receive interest on their account balances. We cannot infer from this an intent by the legislature to create a trust relationship. As noted above, the legislature knows how to create a trust when it wishes to do so, and it does so with more specific language.

¶ 25 Therefore, we conclude that the plain and unambiguous language of the statutes establishes that the Agricultural Funds are not held in trust by the Treasurer. *See Arpaio v. Citizen Publ'g Co.,* 221 Ariz. 130, 132, ¶ 6, 211 P.3d 8, 10 (App.2008) (statutory language controls if plain and unambiguous). "Any extension of the reach of the statute" to include the requirement that the Treasurer holds the Agricultural Funds in trust "must be accomplished by the legislature, not the courts." *Patches,* 220 Ariz. at 182, ¶ 10, 204 P.3d at 440; *see also Backus,* 220 Ariz. at 106, ¶ 22, 203 P.3d at 504 (refusing to read into statute term not included by legislature).

¶ 26 Similarly, we cannot find that the funds are held in a custodial capacity. Appellees concede the Agricultural Funds are "public monies," but argue that the funds are "not owned by the State." Therefore, they argue, the state is merely the custodian of the funds and the legislature cannot sweep them into the general fund.

¶ 27 Appellees cite *Navajo Tribe* in support of their argument that not all public funds held by the state actually belong to the state. The funds in *Navajo Tribe* were federal funds held in the state general fund for a specified purpose. 111 Ariz. at 280, 528 P.2d at 624. *Navajo Tribe* reasoned, and Appellees argue, that monies cannot be transferred to the state's general fund if they are held "for the benefit of contributors for which the state is a mere custodian or conduit." *Id.* at 281, 528 P.2d at 625. Although we recognize that this may be a valid limitation on legislative authority under certain circumstances, we conclude it is inapplicable to the Agricultural Funds.

¶ 28 The Agricultural Funds were raised or assessed pursuant to the operation of a general law, the fee collection statutes. A.R.S. §§ 3–526.04(C), –468.04(C), –587(B), (C). The Lettuce and Citrus Fund statutes provide that the fees collected shall be "disbursed as approved by the council for the purposes prescribed in this article." A.R.S. §§ 3–468.06(A), –526.06(A). The Grain Fund statutes provide that the Grain Fund is comprised of the fees collected and is "established for the purpose of administering this article." A.R.S. § 3–590(A). None of the enabling statutes specify that the Agricultur-

al Funds are held solely for the benefit of the crop producers, who are the contributors of the fees to the Agricultural Funds. *See Navajo Tribe,* 111 Ariz. at 281, 528 P.2d at 625. Indeed, any individual crop producer could disagree with how a council spends its funds, or could not be benefitted by any expenditure. Nonetheless, we see nothing in the statutes that would give that producer a legal claim against the council.

¶ 29 Appellees also cite *Pensioners Protective Ass'n v. Davis* to support their argument that not all public funds are the property of the state. 112 Colo. 535, 150 P.2d 974 (1944). In *Pensioners,* the court reasoned that public funds are those belonging to the state, but exclude monies "collected or voluntarily contributed[ ] for the sole benefit of the contributors." *Id.* at 540, 150 P.2d at 976. The monies in *Pensioners* were contributed specifically by pensioners for their own benefit and were "segregated for a special and designated use." *Id.* Unlike the monies in *Pensioners,* the Agricultural Funds are comprised of assessed fees and donations that are used to "administer" the purposes prescribed by the enabling statutes. A.R.S. §§ 3–468.06(A), –526.06(A), –590(A). The funds are not used for the sole benefit of the crop producers who pay the fees or any donors who donate monies.[7]

¶ 30 We recognize that Appellees view the funds as being paid by their industries for the express purpose of providing benefits to their industries. The statutes do not, however, make any specific person the beneficiary of those funds, nor do the statutes guarantee to any payor of the fees a particular benefit from doing so. As we stated in *Arpaio,* "the funds' enabling statutes did not create 'an irrevocable dedication of the monies in the funds.'" 225 Ariz. at 363, ¶ 19, 238 P.3d at 631. Under these circumstances, the Agricultural Funds are public monies not held in a trust or custodial capacity. Therefore,

they are subject to the legislature's plenary power over state monies.

¶ 31 Appellees also assert that the crop producers who pay fees to the Agricultural Funds have a protected property interest in the funds and were therefore entitled to due process. Specifically, Appellees argue that because the expropriation of Agricultural Funds was accomplished by HB 2620, "[n]o due process was afforded to the true owners of the funds, the crop producers whose money was being held." Appellees also contend that the transfer of the Agricultural Funds to the general fund violated the Takings Clause of the Fifth Amendment of the United States Constitution and its state counterpart, Article 2, Section 17 of the Arizona Constitution.

¶ 32 We believe these arguments are effectively resolved by our conclusion that the funds are not held by the state as a trustee or custodian. Both a takings claim and a due process claim require first that Appellees possess a protectable property interest in the Agricultural Funds. *Maricopa County v. Superior Court,* 170 Ariz. 248, 254, 823 P.2d 696, 702 (App.1991) (requiring a protectable property interest for a due process claim); *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prod., Inc.,* 167 Ariz. 383, 393, 807 P.2d 1119, 1129 (App.1990) (takings claim requires a protectable property interest). As discussed above, the Agricultural Funds were public funds owned by the state, not private or trust monies. Therefore, Appellees did not have any protectable property interest in the funds that implicated either the Takings Clause or the Due Process Clause. Because we agree with the Governor that Appellees do not have a protectable privacy interest in the Agricultural Funds, we need not reach her alternative arguments regarding the Takings Clause or Due Process Clause.

---

7. Nothing in the record indicates that any of the monies at issue were actually donated to any of the Councils. Similarly, nothing in the record indicates that any of the Grain Research Fund consisted of monies subject to refund under A.R.S. § 3–592. The Grain Research Council argues the ability of a payor to obtain a refund shows that the Grain Fund consists of voluntary contributions that are not subject to the legisla-

ture's sweeping authority. This argument is somewhat at odds with the statutory penalties imposed for failure to make the required report and remittance. A.R.S. § 3–591. Moreover, it is unclear to us under what circumstances a person can obtain a refund. Because no actual claims for refunds are alleged, we need not address this issue.

¶ 33 Appellees further assert that Article 9, sections 3 and 9 of the Arizona Constitution restrict the use of the Agricultural Funds to "the purposes identified in the enabling statutes." Article 9, section 3, of the Arizona Constitution provides, in part, that "every law imposing a tax shall state distinctly the object of the tax." Similarly, Article 9, section 9, states, in part, that "[e]very law which imposes, continues, or revives a tax shall distinctly state the tax and the objects for which it shall be applied."

¶ 34 The Governor argues that those sections of the Arizona Constitution are inapplicable because the sections "apply only to monies derived from some form of tax" and that the fees the crop producers pay to the Councils are not taxes. The Governor also argues that even if the monies in the Funds are derived from taxes, the constitutional provisions do not apply here because they only apply to property taxes. We agree with the latter point, so we need not address whether the revenues are technically taxes or fees.

¶ 35 Our supreme court has held that sections 3 and 9 have no reference to an excise tax, but only to taxes on the property within the state. *City of Glendale v. Betty,* 45 Ariz. 327, 333–34, 43 P.2d 206, 209 (1935) (applying section 3); *Gila Meat Co. v. State,* 35 Ariz. 194, 197–98, 276 P. 1, 2 (1929) (applying section 9); *Hunt v. Callaghan,* 32 Ariz. 235, 258–59, 257 P. 648, 655–56 (1927) (same). Because fees imposed by the Councils are plainly not property taxes, sections 3 and 9 do not apply. *Compare Carr v. Frohmiller,* 47 Ariz. 430, 441–42, 56 P.2d 644, 649 (1936) (finding property taxes levied to pay pensions and burial expenses of deceased pensioners subject to sections 3 and 9 of Article 9).

¶ 36 Appellees argue that the fees are not excise taxes. They base their argument on language in *Gila Meat* stating that an excise tax includes "every form of taxation which is not a burden laid directly on persons or property." 35 Ariz. at 197, 276 P. at 2.

They then argue: "The assessments at issue in the instant case are directly imposed on *persons* growing particular crops covered by the enabling statutes." This assertion takes the *Gila Meat* quote out of context. The supreme court's full statement was:

> Taxes are classified as poll, property and excise. The meaning of the first two classes is obvious. Excise has come to include every form of taxation which is not a burden laid directly on persons or property, and a tax on the privilege of engaging in an occupation is clearly an excise.

*Id.* The supreme court's reference to taxes imposed on persons was plainly referring to poll taxes, not any tax that some person has to pay. Even if the fees were taxes for purposes of Article 9, they would be excise taxes. Therefore, sections 3 and 9 do not apply.[8]

¶ 37 Appellees also raise various issues, arguing that HB 2620 violated Article 4 of the Arizona Constitution. Because issues pertaining to Article 4 were not properly raised before the trial court, we decline to review them on appeal. *See Odom v. Farmers Ins. Co. of Ariz.,* 216 Ariz. 530, 535, ¶ 18, 169 P.3d 120, 125 (App.2007) (arguments raised for first time on appeal are untimely and generally deemed waived).

¶ 38 The Grain Council requests an award of its attorneys' fees both on appeal and in the trial court. Because the Grain Council is not the prevailing party, we deny its request for attorneys' fees.

## CONCLUSION

¶ 39 For the reasons set forth above, we reverse the judgment of the trial court and remand for entry of judgment in favor of the Governor.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and

---

8. In their complaints in the trial court, the Appellees asserted that HB 2620 also violated Article 9, sections 5 and 17 of the Arizona Constitution. The trial court did not specifically rely on those provisions, and Appellees make no argu-

SAMUEL A. THUMMA, Judge.[9]

ment regarding them on appeal. Therefore, we do not address them.

9. The Honorable Samuel A. Thumma, Judge of the Maricopa County Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, section 3, and A.R.S. §§ 12–145 to –147 (2003).