290 P.3d 439

INDUSTRIAL COMMISSION OF ARIZONA, for itself and as Trustee for the Special Fund of the Industrial Commission of Arizona, Plaintiffs/Appellees,

Arizona State Compensation Fund; Arizona Contractor's Association, Inc.; National Federation of Independent Businesses; American Insurance Association; Arizona Self–Insurers Association; Arizona Multihousing Association, Arizona Beef Council; Alliance of Construction Trades; Arizona Police Association; Professional Firefighters of Arizona; Arizona Building and Construction Trades Council; and Arizona Education Association, Plaintiffs–Intervenors/Appellees,

v.

Janice K. BREWER, Governor of the State of Arizona, in her official capacity; D. Clark Partridge, Comptroller of the State of Arizona, in his official capacity; and the State of Arizona, a governmental entity, Defendants/Appellants.

No. 1 CA–CV 11–0119.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 23, 2012.

Thomas C. Horne, Attorney General by Mark P. Bookholder, Assistant Attorney General, Phoenix, Attorneys for Defendants/Appellants.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by David J. Ouimette, Phoenix, Attorneys for Plaintiff/Appellee.

Kutak Rock LLP by Michael W. Sillyman, S. David Childers, Vanessa R. Brown, Scottsdale, and Charles E. Jones, Attorney at Law by Charles E. Jones and William D. Sheldon, General Counsel, State Compensation Fund, Phoenix, Attorneys for Plaintiffs–Intervenors/Appellees Arizona State Compensation Fund; Arizona Contractor's Association, Inc.; National Federation of Independent Businesses; American Insurance Association; Arizona Self–Insurers Association; Arizona Multihousing Association; Arizona Beef Council; and Alliance of Construction Trades.

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C. by Stanley G. Feldman, Nathan J. Fidel, Tucson, Attorneys for Plaintiffs–Intervenors/Appellees Arizona Police Association; Professional Firefighters of Arizona; Arizona Building and Construction Trades Council; Arizona Education Association.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked to decide whether the trial court erred when it ruled that the State of Arizona could not transfer funds from the Special Fund of the Industrial Commission of Arizona ("ICA") to the State's general fund. Because the Special Fund's monies are public funds subject to appropriation, we reverse and remand for entry of judgment in favor of the State.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Governor Janice Brewer signed House Bill 2051 ("H.B. 2051") on March 12, 2009. 2009 Ariz. Sess. Laws, ch. 1 (1st Reg. Sess.). The legislation moved money from various state funds into the general fund in an attempt to resolve an anticipated budget shortfall. *Id.* Sections four and five of the legislation authorized the transfer of $4,685,000 from the ICA's Special Fund into the general fund. *Id.*

¶ 3 After failing to get the governor and legislature to reconsider the transfer, the ICA filed this lawsuit. It sought to permanently enjoin the State from transferring any funds from the Special Fund.

¶ 4 The trial court granted a temporary restraining order to preclude the immediate transfer of Special Fund monies. After the court allowed several organizations to intervene,[1] the ICA, the intervenors (collectively, the "ICA") and the State filed cross-motions for summary judgment. The court subse-

---

1. The following entities intervened: the Arizona Police Association; Professional Firefighters of Arizona; Arizona Building and Construction Trades Council; Arizona Education Association; Arizona State Compensation Fund ("SCF Arizona"); Arizona Contractors Association; National Federation of Independent Businesses; American Insurance Association; Arizona Self–Insurers Association; Arizona Multihousing Association; Arizona Beef Council; and the Alliance of Construction Trades.

quently granted summary judgment for the ICA. After its motion for new trial was denied, the State filed this appeal.[2]

## DISCUSSION

### I.

¶ 5 With the passage of the Workmen's Compensation Act in 1925, *see Red Rover Copper Co. v. Indus. Comm'n,* 58 Ariz. 203, 211, 118 P.2d 1102, 1105 (1941), the State Compensation Fund was created to pay compensation benefits to injured workers under the new no-fault system. Not only was it designed to "insur[e] employers against liability for compensation under this act" but the fund ensured that workers were compensated. 1925 Ariz. Sess. Laws, ch. 83, § 30 (codified as amended at Ariz. Rev. Stat. ("A.R.S.") § 23–981 (West 2012)). The legislation authorized the ICA to administer the compensation fund, *id.* § 31, loaned the ICA $100,000 to start using the fund, *id.* § 98, and provided that the fund would be funded subsequently by "all premiums and penalties received and paid into the fund, or property and securities acquired by and through the use of moneys belonging to the fund and deposited or invested." *Id.* § 30.

¶ 6 The ICA used the State Compensation Fund to pay compensation awards as well as conducting its business, *see, e.g., Indus. Comm'n v. Sch. Dist. No. 48,* 56 Ariz. 476, 480, 108 P.2d 1004, 1005–06 (1941) (authorizing the ICA to use the fund to hire private counsel), until the Special Fund was created in 1953. 1953 Ariz. Sess. Laws, ch. 12, § 1 (1st Reg. Sess.) (codified as amended at A.R.S. § 23–1065). The Special Fund was designed to: (1) allow the ICA to "provide such additional awards as may be necessary to enable injured employees to accept the benefits" of any state or federal vocational rehabilitation program for disabled employees; (2) "provide additional awards for in-

jured employees ... where the employees' compensable permanent disabilities are of such a nature as to prevent them from caring" for themselves or "their bodily functions" because their resources are insufficient to provide for "such unusual expenses of care and attendance"; and (3) pay statutory compensation for a second injury after an employee had a prior serious injury, such as the loss of a limb or a "permanent and complete loss of the use of a hand, an arm, a foot, a leg or an eye," which leaves the employee "totally and permanently disabled." *Id.* The legislation also provided that the Special Fund would be funded by "payment[s] into [the] state treasury of not to exceed one (1%) percent of all premiums received by [the] state compensation fund during any year." *Id.*

¶ 7 Sixteen years later, the Administrative Fund was created "to provide for all expenses of the industrial commission in carrying out its powers and duties" and "shall be subject to budgetary review and legislative approval as expenditures from other state funds." 1968 Ariz. Sess. Laws, ch. 6, § 58 (4th Spec. Sess.) (codified as amended at A.R.S. § 23–1081(A)). The Administrative Fund, which is the ICA's operating fund, is also structured to be self-supporting. A.R.S. § 23–1081(B).

¶ 8 The Special Fund was subsequently placed within the Administrative Fund, A.R.S. § 23–1065(A) ("Such payments shall be placed in a special fund within the administrative fund...."), and it continues to be an integral part of the workers' compensation system. The Special Fund currently pays claims to: injured workers if their employers did not obtain workers' compensation insurance, A.R.S. § 23–907(B)–(D); employers who hired previously injured workers who incur new job-related injuries;[3] and, as originally created, provides awards to pro-

---

**2.** The Treasurer was named as a party but is not a party on appeal.

**3.** While "[t]he underlying purpose of the Workers' Compensation Act is to compensate an employee for lost earning capacity and thus prevent the worker from becoming a public charge during periods of disability," the Special Fund "serves the important remedial purpose of pro-

moting the hiring of [previously injured] workers by relieving the employer of increased compensation liability resulting from the combination of preexisting impairments and industrial injuries." *Special Fund Div. v. Indus. Comm'n,* 191 Ariz. 149, 152, ¶¶ 8–9, 953 P.2d 541, 544 (1998) (citations and internal quotation marks omitted).

mote vocational rehabilitation for injured employees. A.R.S. § 23–1065(A)–(C). The Special Fund also reimburses claims of injured workers when insurance carriers, self-insured employers, "or other employer[s] authorized by the [ICA] to process or pay claims directly" fail to fully comply and pay compensation, medical benefits, or final ICA orders. A.R.S. § 23–966(A).

¶ 9 The Special Fund receives no general tax revenue. "The [ICA] may direct the payment into the state treasury of not to exceed one and one-half per cent of all premiums received by the state compensation fund and private insurance carriers during the immediate calendar year." A.R.S. § 23–1065(A).[4] The Fund also receives assessments on self-insured employers, as well as other additional assessments as determined by the director of the ICA. A.R.S. § 23–1065(A), (F), (J). The Special Fund also receives funding from "property and securities acquired by the use of monies in the fund, interest earned on monies in the fund and other monies derived from the sale, use or lease of properties belonging to the fund." A.R.S. § 23–1065(J). And, if the ICA determines that there is a revenue surplus under § 23–961 that is greater than the expenses of the ICA and other expenditures from the Administrative Fund, and the Special Fund is not actuarially sound, the ICA can give notice to the treasurer to transfer the surplus to the Special Fund. A.R.S. § 23–1081(B).

## II.

¶ 10 In granting summary judgment, the trial court ruled that the monies in the Special Fund were "insurance proceeds held in trust for the benefit of employees and employers covered by [the] Workers' Compensation Act," and that those employees and employers had vested rights in the Special Fund monies. As a result, the court found that the Special Fund proceeds were not public revenues or public funds and were not subject to appropriation by the legislature.

¶ 11 "We review issues of law involving statutory interpretation and a trial court's grant of summary judgment de novo." *Bentley v. Bldg. Our Future*, 217 Ariz. 265, 270, ¶ 11, 172 P.3d 860, 865 (App.2007). Further, "[w]e presume statutes are constitutional and must construe them, if possible, to give them a constitutional meaning." *Arpaio v. Maricopa Cnty. Bd. of Supervisors*, 225 Ariz. 358, 364, ¶ 23, 238 P.3d 626, 632 (App. 2010) (citing *Jackson v. Tangreen*, 199 Ariz. 306, 309, ¶ 5, 18 P.3d 100, 103 (App.2000)). When statutory language is plain and unambiguous, we will follow the text as it is written, and "need not resort to other methods of statutory construction." *Indus. Comm'n v. Old Republic Ins. Co.*, 223 Ariz. 75, 77, ¶ 7, 219 P.3d 285, 287 (App.2009). "We will give effect to each word or phrase and apply the usual and commonly understood meaning unless the legislature clearly intended a different meaning." *Id.* (internal quotation marks omitted). Absent evidence of a contrary legislative intent, "we will not construe the words of a statute to mean something other than what they plainly state." *Id.* at 78, ¶ 7, 219 P.3d at 288 (internal quotation marks omitted).

¶ 12 In challenging the judgment, the State contends that the Special Fund monies are not held in trust for employers and employees covered by the Workers' Compensation Act; that the Special Fund monies are public funds subject to the legislature's appropriative authority; and that covered employees and employers do not have vested rights in the Special Fund. The ICA, however, contends that the Special Fund monies are private insurance funds/trust funds or custodial funds for the benefit of injured workers, employers, and insurers and are beyond the appropriative power of the legislature.

¶ 13 The Arizona Constitution gives the legislature "broad powers to decide how state funds are prioritized and used." *Ariz. Farm Bureau Fed'n v. Brewer*, 226 Ariz. 16, 19, ¶ 7, 243 P.3d 619, 622 (App.2010) (citing Ariz. Const. art. 4, pt. 2, § 20). "The [l]egis-

---

4. Effective January 1, 2013, A.R.S. 23–1065(A) will read: "The [ICA] may direct the payment into the state treasury of not to exceed one and one-half per cent of all premiums received by private insurance carriers during the immediate calendar year." A.R.S. 23–1065(A).

lature, in the exercise of its lawmaking power, establishes state policies and priorities and, through the appropriation power, gives those policies and priorities effect." *Rios v. Symington,* 172 Ariz. 3, 6, 833 P.2d 20, 23 (1992). And, in passing a budget, the legislature exercises its "quintessential legislative function." *Kromko v. Ariz. Bd. of Regents,* 213 Ariz. 607, 613, ¶ 22, 146 P.3d 1016, 1022 (App.2006), *vacated on other grounds,* 216 Ariz. 190, 165 P.3d 168 (2007) (quoting *Rateree v. Rockett,* 630 F.Supp. 763, 771 (N.D.Ill. 1986)).

¶ 14 Although the legislature has broad fiscal powers, it may be restricted from transferring funds. *Ariz. Farm Bureau,* 226 Ariz. at 19, ¶ 8, 243 P.3d at 622. For example, in *Arizona Farm Bureau,* we noted that the constitution provides that fuel tax revenues, public employees' pension funds, and assets in permanent funds created for school and state lands cannot be diverted for general purposes. *Id.* at 19–20, ¶¶ 8–11, 243 P.3d at 622–23; Ariz. Const. art. 9, § 14 (fuel), art. 10, § 7(B) (lands), art. 29, § 1 (pensions). Our constitution also precludes the legislature from diverting funds that have been set aside for "a specific purpose by an initiative measure approved by a majority of the votes cast thereon" unless the diversion is approved by three-fourths of each house. Ariz. Const. art. 4, pt. 1, § 1(6)(D). "[A]nd, even then, [the legislature's] actions must further the purpose of the initiative." *Ariz. Farm Bureau,* 226 Ariz. at 19, ¶ 9, 243 P.3d at 622 (quoting *Ariz. Early Childhood Dev. & Health Bd. v. Brewer,* 221 Ariz. 467, 469, ¶ 6, 212 P.3d 805, 807 (2009)) (internal quotation marks omitted); Ariz. Const. art. 4, pt. 1, § 1(6)(D). The legislature, moreover, cannot appropriate for general fund purposes funds that the State holds "in trust or as a custodian," or for the benefit of a third party. *Ariz. Farm Bureau,* 226 Ariz. at 19–20, ¶ 10, 243 P.3d at 622–23 (discussing the rulings in *Navajo Tribe v. Ariz. Dep't of Admin.,* 111

Ariz. 279, 280–81, 528 P.2d 623, 624–25 (1974), and *Arpaio,* 225 Ariz. at 363, ¶¶ 16–17, 238 P.3d at 631; [5] *see, e.g.,* A.R.S. § 23–508(A) (administrative funds from the federal government for vocational rehabilitation), – 705 (special administrative fund), –707 (employment security administration fund).

### III.

¶ 15 We initially determine whether the Special Fund is subject to legislative control. We think it is. First, the Special Fund is an appropriation. The Administrative Fund and its expenditures are "subject to budgetary review and legislative appropriation as expenditures from other state funds." A.R.S. § 23–1081(A). Although no statute explicitly provides that the Special Fund is similarly subject to appropriation, the provisions regarding the Fund disclose such an intention.

¶ 16 No special language is necessary to create an appropriation other than language that discloses an "intent to set aside a certain sum for a specified object in such a manner that the executive officers are authorized to spend that money." *Rios,* 172 Ariz. at 8, 833 P.2d at 25. We discern such an intention. The Special Fund was created; it was funded by a portion of the premiums received by the State Compensation Fund and private insurance carriers, A.R.S. § 23–1065(A); and it is administered by the director of the ICA "subject to the authority of the industrial commission." [6] A.R.S. § 23–1065(J). The Special Fund and its funding mechanism can also be amended by the legislature or even dissolved. Consequently, the ICA Special Fund is an appropriation.

¶ 17 Second, because the legislature set the percentage rate of premiums from the State Compensation Fund and private carriers to be placed in the Special Fund, the funds are public monies. Public monies or funds are statutorily defined to include "mon-

---

**5.** "The third party with an interest in the funds may be the source of the funds, as in *Navajo Tribe* (federal funds), or someone claiming a benefit from the use of the funds, such as a pensioner or insured." *Ariz. Farm Bureau,* 226 Ariz. at 20, ¶ 10, 243 P.3d at 623. Also, "[t]o the extent a third party asserts a claim as a beneficiary of the

funds, the legal rights claimed are analogous to a claim that the person has a vested right in the funds." *Id.* at 20 n. 5, ¶ 10, 243 P.3d at 623 n. 5.

**6.** The ICA members are appointed by the governor. A.R.S. § 23–101(B).

ey belonging to, received or held by, state, county, district, city or town officers in their official capacity." A.R.S. § 35–302. The monies that fund the Special Fund do not go to the ICA but to the state treasurer for the benefit of the ICA. A.R.S. § 23–1065(A). Consequently, the Special Fund is a public fund. As a result, we look to the *Arizona Farm Bureau* factors to determine whether the public funds are prohibited from being transferred to the general fund.

¶ 18 In *Arizona Farm Bureau*, we examined whether the legislature could sweep monies from certain state funds, including the Arizona Iceberg Lettuce Research Council Fund, the Arizona Citrus Research Council Fund, and the Arizona Grain Research Fund, into the general fund despite the trial court's finding that the fees and donations paid into those funds were not general fund monies. *Ariz. Farm Bureau*, 226 Ariz. at 18, ¶¶ 1–3, 243 P.3d at 621. After recognizing that the legislature has broad powers to decide how state funds are prioritized and used, we examined whether the transfer of monies from those funds into the general fund was clearly prohibited by the state or federal constitution. *Id.* at 19, ¶¶ 7–8, 243 P.3d at 622. Specifically, we focused on whether: (1) the "express provisions of the Arizona Constitution prohibit[ed] the legislature from touching certain funds," *id.* at ¶ 8; (2) "the provisions of the Arizona Constitution known as the Voters Protection Act limit[ed] the legislature's ability to divert funds … allocated to a specific purpose by an initiative measure approved by a majority of the vote[r]s," *id.* at ¶ 9 (internal quotation marks omitted); or (3) the public funds were "actually owned by or held subject to the claims of third parties." *Id.* at ¶ 10.

¶ 19 Using the analysis, this court found that neither the Arizona Constitution nor the Voter Protection Act prevented the transfer of the agricultural fund monies into the general fund. *Id.* at 20, ¶ 12, 243 P.3d at 623. Moreover, we concluded that the fees and donations could be transferred into the general fund because: (1) the legislature created the funds and could "redirect the use of those funds without specifically amending the enabling statutes," *id.* at ¶ 14 (quoting *Arpaio*,

225 Ariz. at 363, ¶ 18, 238 P.3d at 631) (internal quotation marks omitted); and (2) the enabling statutes of the challenging funds did not meet the general requirements to create a trust despite language that some of the funds were trustees of the monies until the sums could be transferred to the councils and that the State Treasurer held the funds in trust. *Id.* at 21–22, ¶¶ 18–25, 243 P.3d at 624–25. Consequently, this court found no prohibition to the transfer of funds to the general fund.

¶ 20 Turning to whether the transfer of monies from the Special Fund is unconstitutional, we recognize that the original constitutional provision entitled "Employer's liability law," Ariz. Const. art. 18, § 7, and the 1924 voter approved amendment, entitled "Workmen's Compensation Law," *id.* § 8, directed our legislature to enact legislation to protect workers and have employers pay for occupational death or injuries. Although neither provision prevents the transfer of funds, Section 8 states that the "percentages and amounts of compensation" provided in the 1925 laws shall never be reduced. Because the 1925 legislation created and funded only the State Compensation Fund, which is not at issue in this case, neither constitutional provision limits the legislature's authority to transfer monies from the Special Fund to the general fund.

¶ 21 The trial court relied on the last sentence of § 23–1081(A) to support its finding that the Special Fund was held in trust. The sentence provides that: "All money and securities in the fund shall be held in trust and invested by the treasurer." *Id.* We disagree with the court.

¶ 22 Although the court correctly found that the Special Fund was a fund within the Administrative Fund, the last sentence in § 23–1081(A) does not create a legal trust. *See Ariz. Farm Bureau*, 226 Ariz. at 21–22, ¶¶ 20–21, 24, 243 P.3d at 624–25. Like the statutes examined in *Farm Bureau*, the Special Fund "enabling statutes do not set forth an explicit intent to create a trust." *Id.* at 21, ¶ 21, 243 P.3d at 624. Instead, the last sentence in § 23–1081(A) limits how the State Treasurer may use the funds.

¶ 23 In fact, the term "monies held in trust" is defined by statute. A.R.S. § 35–310(5). Section (4) of § 35–310 defines "treasury monies" as "all monies in the treasury" or "coming lawfully into the possession or custody of the state treasurer," which would include the premiums and assessments that comprise the Special Fund. Section (5) defines "trust monies," as all money in the treasury "other than operating monies." A.R.S. § 35–310(5). And, "operating monies" is defined in section (2) as interest from treasury monies paid to the state general fund. A.R.S § 35–310(2). Despite the general definition of "operating monies," the Special Fund statutes specifically provide that the Fund shall keep any interest generated by its monies in order to sustain the Fund. A.R.S. § 23–1065(J). Consequently, because there is a statutory definition for public monies held in trust, which the Special Fund does not fit, we do not believe that the enabling legislation created a trust.

■ ¶ 24 There is little doubt that the worker's compensation system is, as our supreme court stated, "social insurance" "primarily for the benefit of employees." *Sims v. Moeur*, 41 Ariz. 486, 495, 19 P.2d 679, 682 (1933). And, we know that the State Compensation Fund "is a public fund as against everybody except the employer and the employee, [and] as to them it is a private trust fund to be administered for their use and benefit by the Industrial Commission." *Sch. Dist. No. 48*, 56 Ariz. at 479, 108 P.2d at 1005. But despite such language and the fact that the Special Compensation Fund is part of the overall social insurance between employers and employees, our supreme court recognized that the compensation fund was still a public fund. *Id.* Because the Special Fund serves the same social purpose as the State Compensation Fund, we likewise conclude that the Special Fund is a public fund and not a trust.

## IV.

¶ 25 The ICA also argues that employers and employees have a vested interest in the

Special Fund that the legislature cannot disturb without violating the constitution. Although employers and injured workers receiving payments from the Special Fund have vested interests or rights [7] in its continued vitality, there is no evidence that the transfer would impair the ability of the Special Fund to meet its obligations for the relevant fiscal year. And, to the extent that the Special Fund may not have sufficient monies to pay future claims, there is a statutory provision that would require funds to be transferred from the State Compensation Fund if the Special Fund is not actuarially sound. *See* A.R.S. § 23–1081(B).

¶ 26 For all these reasons, the trial court erred when it concluded that the legislature did not have the authority to transfer monies from the Special Fund because employers and injured workers had a vested interest in the Special Fund. Consequently, because the State's motion for summary judgment should have been granted, we remand this case for the trial court to enter judgment for the State. *See Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 393–94, ¶ 14, 231 P.3d 921, 925–26 (App.2010).

## CONCLUSION

¶ 27 Based on the foregoing, we reverse the ruling of the trial court and remand for entry of judgment in favor of the State.

CONCURRING: ANN A. SCOTT TIMMER and ANDREW W. GOULD, Judges.

---

7. We stated a "vested right is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divesti- ture would be manifestly unjust." *Ariz. Farm Bureau*, 226 Ariz. at 20 n. 5, ¶ 10, 243 P.3d at 623 n. 5 (internal quotation marks omitted).